### SUN CAB CO., INC. *v.* HALL ET VIR.
### (Two Appeals in One Record)
[No. 112, October Term, 1951]

462

*Decided March 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and MARKELL, JJ.

*Theodore Sherbow,* with whom was *James J. Lindsay,* on the brief, for appellant.

*Leroy W. Preston* and *Robert L. Weinberg,* with whom were *Jere J. Santry* and *Weinberg & Green,* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case consists of two appeals in one record from judgments obtained against the appellant in the Court of Common Pleas of Baltimore City by a passenger, and the husband of a passenger in one of the appellant's

taxicabs. The damages were the result of a collision between the taxicab, which was being driven west on Lombard Street in Baltimore City, and an automobile bound north on Gilmor Street. The suits were also brought against the owner and driver of the automobile. Directed verdicts were returned against them, but there is no appeal on their behalf. The cab company filed demurrer prayers which the court reserved, and after verdicts against it, judgments *N.O.V.* in its favor were refused.

Lombard Street, on which the taxicab was proceeding, was protected by stop signs, and was therefore a through highway or boulevard, subject to the provisions of Sections 178, 187(a), and 187(c) of Article 66½ of the Annotated Code (1947 Supp.). The accident occurred at approximately 2 A.M. on August 3, 1946. The weather was clear and dry, and the corner was lighted with an arc light. There was testimony by a disinterested witness that he saw the cab coming west on Lombard Street, and the automobile coming north on Gilmor Street. He said the northbound vehicle came at least 40 or 45 miles an hour, and never made an attempt to stop at the intersection. The cab driver was going about 20 or 25 miles an hour. The cab was in the center of the westbound car tracks, and the other car was straddling the car tracks on Gilmor Street. The owner and the driver of the northbound automobile both said it stopped before crossing the street, and both said they looked and saw nothing. When first seen by them, the taxicab was 6 to 8 feet away. The plaintiff said that when the driver approached Gilmor Street, he was talking to another man sitting across the seat. The cab was going fast. Before it got to Gilmor Street, she saw the automobile coming up that street. She said it was going very slowly. She did not see it stop at Lombard Street, but she saw it come into the intersection. At that time, the taxicab was about one-third of a block from the corner, and there was no other traffic. She told the cab driver he was going to hit the car. She said he had his head turned

464

to the right over his. shoulder, talking to the man sitting across the seat from her, and "he swiveled his head around and applied the brakes, but it was too late." All of this was denied by the cab driver. He said he was about 30 feet from the corner of Gilmor Street and going about 25 miles per hour, when he glanced to his left and saw the car come out of Gilmor Street. He immediately put his foot on the brake, but the automobile continued on and came across Lombard Street. The police officer testified that he found 23 feet of skid marks from the taxicab. The impact between the vehicles took place in the northeast quadrant of the intersection, so that the northbound automobile was a little more than half way across.

What we have before us is whether, considering the testimony most favorable to the plaintiffs, there was any evidence of primary negligence on the part of the cab driver, or whether there was any basis for the application of the doctrine of last clear chance. It is earnestly contended by the appellant that the cab driver had the right to assume that the automobile was not going to violate the law, that his inattention, if any, was not negligence under the circumstances, and that when he first became aware that the other vehicle was coming into the intersection, it was too late for him to stop.

We have had in this court a number of cases which discussed the relative duties of vehicles at a boulevard intersection. The earlier cases were collected and discussed in *Shedlock v. Marshall*, 186 Md. 218, 46 A. 2d 349. None of these cases involved a claim by a passenger in a car on the favored highway against the driver of that car. They are chiefly concerned with the respective rights of those on the favored highway and those on the unfavored highway. Subsequent to the decision in *Shedlock v. Marshall, supra,* other boulevard cases have been decided by this court: *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537; *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 78 A. 2d 647; *State, Use of*

*Frizzell v. Gosnell,* 197 Md. 381, 79 A. 2d 530; *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47, and *Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 81 A. 2d 617.

In only one of these cases was the plaintiff a passenger in the vehicle on the favored highway. That was *Baltimore Transit Co. v. O'Donovan, supra.* In that case, a passenger on a bus was injured as a result of a collision between the bus and an automobile which had entered the favored highway on which the bus was traveling. She recovered a judgment against the bus company. The highway was separated by a grass plot. The automobile was crossing the highway and had reached the grass plot. The driver said that he saw the bus about 175 feet away, and never looked again, but, when he started to cross, his motor stopped, and the bus hit him. The bus driver said that when he was about half a bus-length from the intersection, he saw the automobile alongside the grass plot, traveling at a slow speed. The automobile looked like it was going to stop, so he kept going. However, the automobile kept coming, and when he saw it pass the curb line, he realized it was not going to stop. At that time, he was only a few feet from the intersection. He applied his brakes and pulled his wheel over to the right, but was unable to avoid the collision. We said in that case [78 A. 2d 649]: "In the instant case we think the bus driver had the right to assume that the other vehicle, in a place of safety by the grass plot, would remain there and yield the right of way." The passenger was hurt by the sudden application of the brakes, and we said the proximate cause of the plaintiff's injury was the unexpected intrusion into, or blocking of, the highway by the driver of the automobile. Another passenger on the bus saw the automobile and thought that if the car kept coming and did not stop, there was going to be an accident. She was on the side nearest the automobile, and moved from the window over to the edge of the seat, and, "that quick", the accident happened. As to this testimony, we said: "Nor do we find any merit in the contention

that the testimony of Mrs. Niederding, that she had time to move from the window, showed inattention on the part of the bus driver. Her testimony does not indicate that there was any appreciable interval between her movement and the action of the bus driver in applying his brakes." We reversed the judgment.

The case before us can readily be distinguished from the *O' Donovan* case. In this case, there is definite testimony that, one-third of a block away, the plaintiff saw the northbound automobile entering the intersection. The car was going slowly, and the driver said it was in low gear. The cab driver, had he been looking, according to the testimony of the passenger-plaintiff, could have seen, as she saw, that the other vehicle was already in, or entering, the intersection. He was not looking, according to her testimony, and did not look until the last minute, when it was too late. The jury could have found, as it apparently did find, that this was negligence on the part of the cab driver which caused the impact and the injury to his passenger.

Appellant urges that speed is not negligence in a favored driver, and is irrelevant in determining the respective rights between favored and unfavored drivers, citing *Brooks v. Childress, supra* and *Sonnenburg v. Monumental Motor Tours, supra.* In *Brooks v. Childress,* [81 A. 2d 50], we said there was no evidence that the Childress tractor-trailer was exceeding the speed limit, and the driver "had no reason to believe that Wesley would disregard the boulevard law and pull out in the road in front of him." In *Sonnenburg v. Monumental Motor Tours,* [81 A. 2d 620], we said: "The driver of a taxicab or any other driver is not under a duty to anticipate, *in the absence of evidence,* that other drivers will often—or ever—cross negligently in violation of the boulevard law." (Emphasis supplied.) And, further on, discussing *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 136 A. L. R. 1485, one of the earliest cases, we said: "And in other passages in that opinion the court recognized that the driver on the favored highway does not

have an absolute right to proceed under all circumstances." Neither of these cases holds that a driver on a favored highway can proceed without regard to the possibility of some other driver usurping his right of way.

Boulevards are posted for the purpose of accelerating traffic, but they are not constituted speedways for reckless drivers who do not watch what is going on. It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable. There is testimony in the case before us, as we have said, which would permit the jury to find that had the cab driver been looking, he could have seen the other car entering the intersection, and he could have seen this when he was far enough away to have avoided the accident, unlike the O'Donovan case, where there was no such evidence. We do not alter or change or destroy the effect of our previous decisions on the boulevard law when we hold that there was sufficient evidence in this case of the negligence of the cab driver to go to the jury.

*Judgment affirmed with costs.*