## GREYHOUND LINES, INC. *v.* RUBY ALDERSON ET AL.

[No. 972, September Term, 1974.]

*Decided May 9, 1975.*

The cause was submitted on briefs to MORTON, MOORE and LOWE, JJ.

Submitted by *William H. Clarke* and *Matthew J. Kastantin* for appellant.

Submitted by *Samuel Intrater* for appellee, Ruby Alderson and by *Albert D. Brault* and *Brault, Scott & Brault* for other appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal by Greyhound Lines, Inc., from the refusal of the trial judge to grant its motion for a judgment n.o.v. after a jury in the Circuit Court for Prince George's County (Couch, Jr., J., presiding) rendered a verdict in favor of Ruby Alderson and her husband who had sued to recover damages for personal injuries.

The case arose out of an accident involving a Greyhound Lines bus which resulted in the death of five passengers and serious bodily injuries to many other passengers. A number of suits for damages were brought against Greyhound Lines, Inc., Gerald T. Koehler, the driver of a pick-up truck, and against Ronald Williamson, the driver of a passenger car. It was stipulated by counsel for all parties, with the approval of the court, that the present case would serve as the vehicle to determine the liability, if any, of the respective defendants. All litigants agreed to abide by the jury's

determination of this issue and if liability were established against any or all of the defendants, the issue of damages to be recovered by the various plaintiffs would be tried in separate actions later.

After a four-day trial and before submitting the case to the jury, the trial judge granted defendant Williamson's motion for a directed verdict and, pursuant to Maryland Rule 563, reserved ruling on the motions of Greyhound Lines, Inc., and Gerald T. Koehler for directed verdicts. The jury returned a verdict against Greyhound and Koehler on the issue of their liability to the plaintiffs for injuries received in the accident. The trial judge thereafter denied the motions for judgment n.o.v. filed by Greyhound and this appeal by Greyhound Lines, Inc., followed.[1]

Williamson is not involved in the appeal and Koehler appears as an appellee.

Greyhound poses the following questions:

"1. Whether there was sufficient evidence of negligence on the part of the Appellant's driver to submit the case to the jury.

2. Whether the Lower Court erred in denying Appellant's Motion for Judgment Notwithstanding the Verdict.

3. Whether the Lower Court erred in admitting into evidence portions of the letter from the Appellant to its driver regarding his failure to comply with driving practices of the Appellant."

The record indicates that about 6 p.m. on May 4, 1972, a Greyhound Lines bus was being operated by a company

---

1. Oral arguments of the parties to this appeal were heard by this Court on September 27, 1974. Thereafter, we dismissed the appeal as premature under the provisions of Maryland Rule 605 a. See Greyhound Lines, Inc. v. Alderson, et al., 23 Md. App. 224. The trial judge then entered an order pursuant to Maryland Rule 605 a "that there is no just reason for delay in the entry of judgment absolute on the claims of the plaintiffs, Ruby and Kenneth Alderson, that the defendants, Greyhound Lines, Inc., and Gerald T. Koehler are liable to them for damages." A new order of appeal was thereafter filed which we now consider to be properly before us.

employee, Robert Newton, on a daily commuter run between Washington, D. C., and Waldorf, Charles County, Maryland. The bus was traveling south on Maryland Rt. 5, a dual highway separated by a grass median strip. As the bus approached the intersection of Rt. 5 and Beach Drive, in the general area of Marlow Heights, Prince George's County, the driver moved the bus from the slow lane to the fast lane. A passenger car heading east on Beach Drive and driven by Ronald Williamson was stopped, facing a stop sign, awaiting entrance to Rt. 5. Facing Williamson across the southbound lanes of Rt. 5 was a pick-up truck in the median strip crossover, heading west, preparatory to entering Rt. 5, driven by Koehler.

James F. Donnellan, a passenger on the bus, testified that the highway was very wet and as the bus approached the intersection of Rt. 5 and Beach Drive, it was on a substantial downgrade. He stated that the bus was in the slow lane coming down the hill at about 50 miles per hour and then changed to the fast lane. According to this witness, as the bus approached the intersection, he observed a pick-up truck 40 or 50 yards away in a stationary position in the median crossover. He stated that as the bus was changing from the slow to the fast lane, he observed the pick-up truck start up and enter the fast lane of the highway and attempt to accelerate while remaining in the fast lane. As the bus got to the intersection, the driver applied the brakes and the rear end of the bus began to slide sideways and spin out of control. It then caromed off into a ditch and overturned.

The witness recalled that sometime prior to the accident the driver had applied the brakes of the bus after passing the intersection of Southern Avenue and the bus "skidded over and hit the curb right there."

The driver of the bus testified that as he was half way down the hill approaching the intersection at a speed of 30 miles per hour, he observed the Williamson car on Beach Drive partially on the shoulder of the highway. Because he feared the driver might proceed on to the shoulder and head south in front of him on Rt. 5, he decided to change lanes.

After the bus was substantially in the fast lane, the pick-up truck pulled out of the median crossing and headed south in the fast lane of Rt. 5. At that point, according to the bus driver, the truck was two bus lengths ahead of the bus and this was the first time he had observed the truck. He then applied his brakes and pulled back into the right lane to avoid hitting the truck and ended up turning over into a ditch.

Gerald T. Koehler, the driver of the truck, testified that he was driving a 1968 Chevrolet pick-up truck and just prior to the accident was stopped at the stop sign controlling traffic on Beach Drive, facing west, preparing to enter the southbound lane of Rt. 5. As he looked north, he saw what he believed could have been a bus approximately 200 yards away in the right, or slow, lane. He then drove the truck into the fast lane and proceeded south in that lane at approximately 20 or 30 miles per hour. According to him, he accelerated his truck as fast as possible and purposely stayed in the fast lane to avoid being hit by the bus, which he apparently assumed would stay in the right lane.

Ronald Williamson testified that he was seated in his passenger car, facing east, on Beach Drive awaiting entrance to Rt. 5 when he observed the bus, traveling south on Rt. 5 at a speed of 40 to 45 miles per hour, move from the right-hand lane to the left-hand lane and at the same time he observed the truck pull into the left-hand lane of Rt. 5. It was his opinion that had the bus not applied the brakes and endeavored to swing back to the right-hand lane, the bus would have collided with the truck.

A number of other passengers testified at the trial below, but a summary of their testimony is not necessary to this opinion.

An expert testified that he examined the tires of the bus shortly after the accident and found their condition to be "almost new, if not new."

There was offered into evidence, over appellant's objection, a letter from Greyhound Lines, Inc., to the driver of the bus, which read in part:

"On the above date while operating schedule and at location noted you became involved in a serious accident wherein your bus ran off road and turned over resulting in five fatalities and serious injuries to passengers and causing severe damage to bus. Investigation of this accident has revealed that you failed to exercise required defensive and professional driving practices required of a Greyhound driver."

The trial judge admitted into evidence the excerpt from the letter on the basis that it constituted an admission by the appellant which was relevant to the issue of the bus driver's negligence. We cannot agree, as appellant argues, that this was error.

In IV Wigmore, *Evidence* § 1048 (Chadbourn rev. 1972), it is stated: "The statements made out of court by a party-opponent are universally deemed admissible, when offered against him." This generalization is later qualified with the proviso that the out-of-court statement by the party-opponent must exhibit "the quality of inconsistency with the facts now asserted by him in pleadings or in [his] testimony." That the position taken by Greyhound in its letter to the bus driver is inconsistent with its position at the trial below where it asserted "that there was no evidence of negligence on the part of its driver" is self-evident. We think it is entirely clear that the statements in the letter were material and relevant for they tended to prove the very fact at issue — the negligence of the bus driver — which appellant now disputes.

In *Brumage v. Blubaugh*, 204 Md. 144, one of two drivers involved in a collision advised the other, at 147: "He would see that it was fixed — told me to get it fixed, and he would see that it was paid for." Later, the same driver who had made the gratuitous statement sued for property damage to his automobile. The statement was held to be admissible as an implied admission of fault, affecting the weight of the party-opponent's cause of action. *See also Gordon v. Opalecky*, 152 Md. 536.

We cannot agree with the appellant's contention "that the letter in question cannot be construed as an admission since it merely states the company's opinion that their driver failed to exercise some unknown, unspecified 'defensive and professional driving practices' which were never introduced into evidence." The company arrived at the conclusion expressed in the letter after "[i]nvestigation of this accident" and while it may not be an expressed admission of the bus driver's negligence, it is certainly relevant to that issue.

In 31A C.J.S., *Evidence* § 277, it is stated:

> "It is not necessary that the statement should be a direct admission; it may be an indirect admission, as where it bears on the issue incidentally or circumstantially. [Footnote omitted.]

And further, in *Simmons v. Haas*, 56 Md. 153, the Court of Appeals held simply, at 161:

> "Letters of the adverse party are admitted in evidence against those writing them, as admissions against their interest, under the condition that they refer to the matter in controversy, and the whole admission is to be taken together."

We think the excerpt from the letter was properly admitted into evidence and the weight to be accorded its contents was a matter for the jury.

In assessing the soundness of appellant's contention that the trial judge erred in denying the motion for judgment n.o.v., because there was insufficient evidence of negligence to support the jury's verdict, we start with the proposition that the truth of all credible evidence on the issue of the bus driver's negligence and all inferences fairly deducible therefrom must be examined and considered in the light most favorable to the appellees. " 'If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury,' and a motion for judgment n.o.v. denied. *Belleson v. Klohr*, 257 Md. 642, 646." *Miller v. Michalek*, 13 Md. App. 16, 18.

Judged by these standards, we think the trial judge properly submitted the case to the jury and properly denied appellant's motion for judgment n.o.v.

There is the testimony of the passenger, Donnellan, who testified that the pick-up. truck was some 40 or 50 yards from the bus when it pulled into the fast lane from the median crossing. The colloquy between counsel and the witness bears repeating:

> "[Mr. Intrater, Counsel for appellees Alderson, *et al.*] Q. During that period of time after the truck straightened out what did the driver of the bus do?
>
> [Witness Donnellan] A. Nothing.
>
> Q. When you first saw that truck pull out onto the highway and start moving south did the bus driver at that time in any way start to slow the bus?
>
> A. No, sir.
>
> Q. Did the bus driver at that time in any way honk his horn?
>
> A. No, sir.
>
> Q. Did the bus driver do anything when you first saw that truck pull out onto the highway, either to slow the vehicle, give warning or do anything else to avoid coming up rapidly on that truck?
>
> A. No, sir.
>
> Q. So then the bus continued at the same rate of speed down the road, is that correct?
>
> A. Yes, sir."

Donnellan further testified that he was a driver of 15 years experience and that "when we were way up the road I saw him [Koehler] making his move. I, of course, wasn't alarmed at all. I saw him getting out into that left-hand lane. I said, 'Now, gee, he's just going to stay in that left-hand lane!' "

Substantially all of the witnesses described the condition of the highway as "wet" and there was the testimony of

Donnellan that the bus had earlier skidded against the curb when the driver applied the brakes.

There was Koehler's testimony that the bus was at a distance of 200 yards from the intersection when he entered the fast lane of Rt. 5 and since the bus was in the slow lane at the time he saw it, Koehler stayed in the fast lane, assuming the bus would continue in the slow lane.

There was the bus driver's testimony that half way down the hill he observed the Williamson passenger car at the intersection but did not see the pick-up truck until it was two bus lengths ahead of him.

There was the testimony of Richard L. Davis whose car was stopped at the intersection just to the rear of the Williamson car. Davis, an experienced bus and truck driver, saw the wheels of the bus "locked" as it went into the skid or spin and he explained:

> "Well, on wet surfaces when you hit air brakes, especially with a panic brake, you really don't have to panic with a wet surface. But with a wet surface when you hit those brakes, those air brakes are so great that they will stop a wheel immediately and they will not turn at all, they will just continue to slide there. There is no control over the vehicle whatsoever."

Finally, there was the letter from Greyhound Lines, Inc., to its driver admonishing him that the company's "[i]nvestigation of this accident has revealed that you failed to exercise required defensive and professional driving practices required of a Greyhound driver."

In concluding that a broad overview of the totality of the evidence adduced below warranted submitting the issue of Greyhound's negligence to the jury, we, of course, recognize that the bus was proceeding upon a boulevard and, thus, Greyhound, as the owner and operator of the favored vehicle, was entitled to all the benefits that flow from Maryland's rigorous "boulevard rule." Code, Art. 66$^1/_2$ § 11-403; *Hensel v. Beckward,* 273 Md. 426. In *Hensel* the Court

of Appeals reaffirmed, in no uncertain terms, the views it had expressed in *Creaser v. Owens*, 267. Md. 238, 245, when it said, at 429:

> "In order to make crystal clear our holding here, we emphasize that if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard law is applicable then in a suit based on that collision the unfavored driver is deemed to be .negligent as a matter of law. And, if the unfavored driver is a plaintiff, his suit is defeated unless the doctrine of last clear chance rescues his claim. * * * Whereas, if the unfavored driver is a defendant he is liable except in the rare case when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury, *i.e.*, whether he was guilty of negligence that was a proximate cause of the accident." [Citations omitted.]

The Court of Appeals in *Hensel* and *Creaser* spoke in terms of a suit between an unfavored driver and the favored driver. Here, however, the suit is not between the favored and unfavored drivers but is between Greyhound Lines, Inc., a common carrier, and its paying passengers. While many aspects of the "boulevard rule" may come into play in assessing the overall negligence of Greyhound, we think the law is clear that because of its status as a common carrier, Greyhound cannot resort to the boulevard rule, under the circumstances here, as a shield to protect it from the high standards of care owed to its passengers. "A bus driver owes passengers the duty to exercise the highest degree of care consistent with the nature of his undertaking." *Miller v. Mass Transit Adm.*, 18 Md. App. 220, 222.

In *Sun Cab Co., Inc. v. Hall*, 199 Md. 461, a taxicab was proceeding on a boulevard in Baltimore City. One of the passengers obtained a judgment against the cab company for damages for personal injuries resulting from a collision at an intersection. The company then appealed from a denial of its motion for judgment n.o.v. Although the evidence

showed that the taxi was not proceeding at an excessive rate of speed, there was testimony, at 464, on behalf of the injured passenger that as the favored taxi approached the junction of the other street, the driver was "talking to the man sitting across the seat." It also appeared that the driver, on turning his head forward just before the accident, made a futile attempt to avoid the other automobile. We think that case presented an enlightening exposition of the problem presented here: a passenger in a favored "common carrier" vehicle pursuing a cause of action against its owner and driver. It was stated, at 467:

> "Boulevards are posted for the purpose of accelerating traffic, but they are not constituted speedways for reckless drivers who do not watch what is going on. It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable. There is testimony in the case before us, as we have said, which would permit the jury to find that had the cab driver been looking, he could have seen the other car entering the intersection, and he could have seen this when he was far enough away to have avoided the accident, unlike the O'Donovan case [*Baltimore Transit Co. v. O'Donovan*, 197 Md. 274], where there was no such evidence. We do not alter or change or destroy the effect of our previous decisions on the boulevard law when we hold that there was sufficient evidence in this case of the negligence of the cab driver to go to the jury."

Appellant places great reliance upon *Thompson v. Terry*, 245 Md. 480. There, a judgment against the operator of a taxicab, Terry, obtained by his passenger, Thompson, was set aside on a motion for judgment n.o.v. and the Court of Appeals affirmed the action of the trial court. The evidence

there, however, demonstrated that an unfavored driver, Conway, came heedlessly through a red light and collided with the taxicab. The cab driver had *no opportunity to avoid the collision* and the court found that there was no evidence that the cab driver did not carry out his duty to the passenger to exercise "the highest degree of care."

The Court in *Thompson v. Terry, supra,* went on to say, at 487: "Insofar as *Terry's duty to Conway was concerned,* this Court has not imposed upon a taxicab any greater duty of care as a favored vehicle in a boulevard case than an ordinary vehicle." [Emphasis supplied.] Conway, of course, was the driver of the unfavored vehicle, not the passenger in the taxicab.

In *Yellow Cab Co. v. Bonds,* 245 Md. 86, a passenger in a taxicab obtained a judgment against the cab driver who, while on a favored highway, ran into the back of a car in front of him when that car was forced to stop in order to avoid colliding with another car which had failed to stop at a stop sign and improperly continued on to the favored highway. On appeal from the judgment, the cab company contended that the negligence of the intruding automobile was the sole proximate cause of the accident. In affirming the action of the trial court denying the cab company's motion for judgment n.o.v., the Court stated, at 90-91:

> "That there can be more than one proximate cause of an accident is clearly established. While the negligence of the cabdriver must have been a *proximate cause* in order to warrant recovery by the passenger, it did not necessarily have to be the sole proximate cause of the accident. The negligence of the operator of the intruding automobile did not excuse the cab owner and driver from liability for damages. It was enough that the negligence of the cabdriver, in concurrence with that of the other motorist, proximately caused or contributed to the injuries the passenger sustained."

There was evidence to show, according to the court's recapitulation, at 90, "that the cabdriver was following too

closely behind the automobile in front of him, that he failed to pay attention to traffic conditions ahead of him and that his negligence in each respect contributed to the happening of the accident." The Court went on to say at 91:

"The argument of the appellants [cab company and driver] is that the boulevard law relieved them from liability because the operator of the cab was the favored driver, but this fact did not relieve the cabdriver of the obligation to use due care under the circumstances of this case. * * * Nor did the fact that a concurrent tort-feasor violated the boulevard law affect the claim of the appellee [passenger] against the appellants." [Citations omitted.]

While it may well be that the action of Koehler in driving his pick-up truck from the median crossing on to Rt. 5 was an act of negligence contributing to the accident, we do not believe that the jury below, on the state of the evidence before it, was compelled to find that Koehler's action was necessarily the sole proximate cause of the accident.

The evidence was such that the jury could conclude that the inattentiveness of the bus driver to the hazards of the road condition and the dangers presented ahead by the cars preparing to enter or entering the highway, or the driver's failure to operate the brakes in a safe and reasonable manner, especially in view of the characteristics of the braking system of the bus, in combination or singly, amounted to a general failure to operate the bus with that high degree of care which the driver owed his passengers.

Otherwise stated, we think there was sufficient, competent evidence of Greyhound's negligence to support the plaintiffs' right to recover and, accordingly, the issue was properly submitted to the jury. The trial judge did not err in denying the appellant's motion for judgment n.o.v.

*Judgment affirmed; costs to be paid by appellant.*