553 A.2d 1314

**Stanley GUNTHER, et al.**

v.

**James SMITH, et al.**

**No. 858, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 3, 1989.

Michael J. McAulliffe (John M. Quinn and Quinn & McAuliffe, on the brief), Rockville, for appellants.

Paul J. Weber (Rollins, Smalkin, Richards & Mackie, on the brief), Baltimore, for appellees.

Argued before ALPERT, KARWACKI and WENNER, JJ.

KARWACKI, Judge.

Stanley Gunther and his 18 month old son, Robert, were injured when they were accidentally thrown from a horse-drawn wagon being operated by the appellee, James Smith. The complaint filed by Stanley Gunther and Eileen Gunther, his wife, against appellee and others in the Circuit Court for Montgomery County to recover damages for those injuries alleged that appellee's negligence in operating the wagon was the proximate cause of those injuries. The case was tried before a jury which returned a special verdict exonerating the appellee from any negligence contributing to the accident. This appeal is from the judgment entered on that verdict.

The sole issue presented for our review is the propriety of the trial judge's refusal to instruct the jury that appellee owed the passengers in the wagon he operated a duty to employ the highest degree of care consistent with the undertaking. Instead, the court instructed the jury that appellee owed the passengers on the hayride a duty of

ordinary care under the circumstances.[1]  We shall hold that the proffered instruction was properly rejected and shall affirm the judgment in favor of the appellee.  The facts material to the resolution of the issue are undisputed and can briefly be recounted.

On June 21, 1986, Standard Federal Savings and Loan Association (Standard Federal) held a picnic for its employees and their guests.  Between 800 and 1,000 persons attended.  Eileen Gunther, who was employed by Standard Federal, was joined at the picnic by her husband and their son, Robert.

The picnic was catered by Collegiate Barbequer's, Inc., and held at its premises known as Smokey Glenn Park in Gaithersburg.  As part of the entertainment it provided for the persons attending the gathering, Standard Federal contracted with appellee to operate a hayride at the picnic.  Pursuant to that arrangement, appellee furnished a large wagon filled with hay and pulled by two horses.  He operated the hayride from a designated point at the park providing a trip through the park for those who wished to participate.  The hayrides were operated throughout the day.

At about 4:00 p.m. appellants and their 18 month old son Robert boarded the wagon for what was announced to be the last ride of the day.  Approximately 40 people were seated in the wagon for that ride.  During the ride the bridle on one of the horses came loose and appellee brought the wagon to a stop in order to refit the bridle.  In the

---

1.  "Ordinary care" was defined as "that caution, attention or skill a reasonable person would use under similar circumstances."  The trial judge also instructed the jury that "a reasonable person changes his conduct according to the circumstances and danger he knows or should know exists.  Therefore as the danger increases, a reasonable person acts more carefully."  That portion of the instruction explaining the concept of negligence to the jury concluded: "A driver of a wagon is negligent if he does not use that degree of care and skill which a reasonably competent wagon driver engaged in a similar practice, acting in similar circumstances, would do under the same circumstances."

course of appellee's attempt to do this, the horses became agitated and began pulling the wagon in circles. Before the horses could be brought under control, appellant Stanley Gunther and appellants' son were thrown from the wagon by its erratic motions.

Appellants assert that in operating the hayride appellee was a common carrier and owed a heightened duty of care to his passengers, *i.e.*, he was "... bound to employ the highest degree of care for their safety, consistent with the nature of the undertaking." *Mass Transit Administration v. Miller*, 271 Md. 256, 259, 315 A.2d 772 (1974). Alternatively, appellants argue that, even if the appellee was not acting as a common carrier, he was operating "a dangerous and unpredictable amusement ride such that the appropriate standard of care was the same as that assigned to a common carrier." We reject both arguments.

In imposing a more demanding standard of care upon common carriers, the appellate courts of this State have emphasized the public nature of their service of providing public transportation so necessary to stimulating the channels of commerce and conveying all members of the public in their commercial and private pursuits. *Drews v. State*, 224 Md. 186, 191, 167 A.2d 341 (1961), *vacated on other grounds*, 378 U.S. 547, 84 S.Ct. 1900, 12 L.Ed.2d 1032 (1964) (common carriers satisfy "urgent public need"); *Stanley v. American Motorist Ins. Co.*, 195 Md. 180, 185, 73 A.2d 1 (1950) (common carriers serve public "indiscriminately"); *Riden v. Philadelphia, Baltimore & Washington R.R. Co.*, 182 Md. 336, 344, 35 A.2d 99 (1943) ("common carrier of passengers ... is a public necessity."); *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 298, 533 A.2d 1316 (1987) (common carriers are businesses which "affect the public interest"); *Rutledge Co-operative Assoc., Inc. v. Baughman*, 153 Md. 297, 301, 138 A. 29 (1927) ("common carrier is obliged within the limits of its ability to serve all who apply"); *see generally* Comment, *Distinction Between Common Carriers and Contract Carriers*, 35 Mich.L.Rev. 802 (1938); Note, *Determining the Status of Motor Carri-*

*ers: Common or Private?*, 24 Va.L.Rev. 168 (1938). Accordingly, parties operating a number of familiar forms of public transportation have been characterized as common carriers. They include: railroads, *Kaplan v. Baltimore & Ohio R.R.*, 207 Md. 56, 113 A.2d 415 (1955); taxicabs, *People's Counsel v. Public Service Comm'n*, 52 Md.App. 715, 451 A.2d 945 (1982); commercial airlines, *Barsallo v. Barsallo*, 18 Md.App. 560, 308 A.2d 457 (1973); and buses, *Carolina Coach Co. v. Bradley*, 17 Md.App. 51, 299 A.2d 474 (1973). On the other hand, the heightened standard of care exacted from common carriers has been held to be inapplicable to operators of amusement devices. *Miller v. Robinson*, 241 Md. 335, 216 A.2d 743 (1966) (golf cart operator not a common carrier); *Hawk v. Wil–Mar, Inc.*, 210 Md. 364, 123 A.2d 328 (1956) (roller coaster operator held to standard of ordinary care); *Carlin v. Smith*, 148 Md. 524, 531, 130 A. 340 (1925) (operator of amusement device which dropped patrons through a false floor held to standard of ordinary care); *Benedick v. Potts*, 88 Md. 52, 40 A. 1067 (1898) (operator of "mimic railroad" held to ordinary standard of care); *Smith v. Benick*, 87 Md. 610, 41 A. 56 (1898) (operator of balloon ascension ride held to standard of ordinary care). Thus, our Court of Appeals has rejected the contrary view adopted in some jurisdictions. The cases are collected in Anno. 66 A.L.R.2d 689 (1959).

Under the undisputed facts of the instant case, appellee did not provide public transportation, the necessary incident of common carriage. Rather, he offered an amusement ride for the entertainment of the persons attending a private party on private premises. His function was not to transport the public from one place to another. Consequently, we hold that the appellee was not a common carrier and that the trial judge properly instructed the jury that he owed the passengers of his hayride a duty of ordinary care under the circumstances.

We also reject the alternative argument of the appellants that appellee should be held to the same duty of care as that imposed upon a common carrier because the hayride is

"a dangerous and unpredictable amusement ride." We are unable to discern any danger inherent in a horse drawn wagon which is greater than that posed by a mechanically powered amusement device, such as a roller coaster.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANTS.