874 A.2d 973

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

v.

## Josephine SEYMOUR and Maryland Automobile Insurance Fund.

No. 106, Sept. Term, 2004.

Court of Appeals of Maryland.

May 13, 2005.

Janice L. Cole, Asst. Gen. Counsel (Carol B. O'Keeffe, Acting Gen. Counsel, Mark F. Sullivan, Deputy Gen. Counsel, Gerard J. Stief, Assoc. Gen. Counsel of Washington Metropolitan Area Transit Authority, on brief), Washington, DC, for petitioner.

**220**

Michael J. Perticone (Hardwick & Harris, LLP, on brief), Baltimore, Robyn B. Lupo (Eric S. Slatkin & Associates, on brief), Burtonsville, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

The case before us concerns an incident involving a Metrobus belonging to the Washington Metropolitan Area Transit Authority ("WMATA"), petitioner, and the injury that Ms. Josephine Seymour, respondent, a passenger on the Metrobus, sustained when the bus came to a sudden and abrupt stop.

Seymour filed suit in the District Court of Maryland sitting in Prince George's County against WMATA and the Maryland Automobile Insurance Fund—Uninsured Division ("MAIF")[1] for the injuries sustained as a result of the Metrobus driver suddenly braking to avoid a collision with a "phantom vehicle" which pulled out from a parking lot and onto the main boulevard in front of the bus. Trial was held in the District Court on April 21, 2003 and, at the conclusion of the trial, judgment was entered against both WMATA and MAIF, jointly and severally, in the amount of $20,000.00.

On appeal to the Circuit Court for Prince George's County, the Circuit Court, on September 17, 2004, issued an Opinion and Order affirming the decision of the District Court. WMATA thereafter filed a Petition for Writ of Certiorari to this Court on October 20, 2004. On December 17, 2004, we granted the petition. *WMATA v. Seymour*, 384 Md. 448, 863 A.2d 997 (2004). Petitioner presents one question for our review:

"Did the Circuit Court of Prince George's County err in holding that WMATA cannot avail itself of the boulevard

---

1. Under Maryland Code (1997, 2002 Repl.Vol., 2004 Supp.), § 20–601(c) of the Insurance Article, because "the identity of the motor vehicle and of its driver and owner [could not] be established" (alteration added), thus making it a "phantom vehicle," Seymour was eligible to make a claim against MAIF for her injuries.

rule when a claim is brought by a passenger of WMATA due to WMATA's higher duty of care as a common carrier?"

We hold that, under the facts found by the District Court judge, he did not err in holding WMATA liable for the injuries suffered by Seymour due to the bus's sudden stop. As we shall explain, the circumstances surrounding the sudden stop allowed for the fact finder, *i.e.*, the District Court judge, to find that certain actions by the bus driver while traveling on the boulevard were a proximate cause of Seymour's injuries.

## Facts

At approximately 7:00 p.m. on August 25, 2001, a WMATA Metrobus traveling eastbound on University Boulevard,[2] on the right curbside lane, made a service stop near the intersection of University Boulevard and Riggs Road in Prince George's County, Maryland. Ms. Josephine Seymour boarded the bus at this service stop. Seymour, who was sixty-four-years-old when the incident underlying this lawsuit occurred, was seated in the bench-like area of the bus situated directly behind the bus driver and facing the right side of the bus. This area of seating is commonly referred to as "priority seating" and is generally to be used by the elderly and the handicapped, as it is less constricting as compared to other seats and closer to the door of the bus. All the seats were substantially occupied, requiring some on the bus to stand in the aisle during the commute.

As the bus left the service stop, first entering the right turn lane, and neared the intersection of University Boulevard and Riggs Road, the bus driver initially observed a phantom vehicle approaching an exit from a parking lot to his right but believed that it was going to stop. He continued to accelerate. The phantom vehicle did not stop, and the bus driver was forced to brake abruptly in order to avoid a collision with the

---

**2.** The eastbound side of University Boulevard has three lanes. The far right lane is for right turns only onto Riggs Road. The center lane is for through traffic, and the far left lane is for through traffic and for left turns onto Riggs Road.

phantom vehicle, as it suddenly pulled out in front of the bus and onto University Boulevard. The bus driver stated at trial before the District Court that at the time of the incident, "traffic was kind of heavy, like rush hour," and that he saw the phantom vehicle approaching the roadway and it appeared to be slowing down but, "at the last second," it entered onto University Boulevard in front of the bus. By his application of the brakes, the bus driver was able to avoid contact with the phantom vehicle, which was never identified beyond the most basic description by the bus driver that it was a "black car." [3] Because of this sudden stop, however, Seymour was violently thrown from her sitting position behind the bus driver and fell to the floor of the bus, causing her to suffer a fracture to her right leg. At least one other passenger on the bus that day was also injured because of this incident and Ms. Glenis Valdez, the daughter of this injured woman who was also with her mother on the bus when the incident occurred, testified at the District Court hearing as to her recollection of what occurred prior to, during and after the bus's abrupt stop.

Aware that Seymour, and possibly others, appeared to have been injured by the bus's sudden stop, the bus driver proceeded to drive the bus onto Riggs Road and stop alongside the curb to wait for emergency services to arrive. Seymour testified that she remained on the floor of the bus until paramedics assisted her off the bus and into an ambulance.

Seymour thereafter sued WMATA for the injuries she sustained from her fall. At trial in the District Court, Seymour testified that she remembered the bus quickly accelerating from the service stop before the bus driver applied the brakes and she was thrown to the floor. Ms. Valdez also

---

3. The District Court transcripts, which were provided in the record, show that only the WMATA bus driver testified as to seeing this phantom vehicle immediately prior to the bus's abrupt stop. Neither Ms. Seymour nor Ms. Glenis Valdez, another passenger on the bus whose mother's injuries from the stop required medical attention and who testified at trial, saw the phantom vehicle. As mentioned, however, the priority seating where both ladies were sitting did not face the front of the bus, but the sides.

testified that she remembered the bus driver accelerating from the service stop at what she perceived to be an abnormally fast rate before the bus's abrupt stop also caused her mother to be thrown from her seat.

### Discussion

■ In Maryland, to succeed on a negligence claim, a plaintiff must prove four well-established elements: " '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.' " *BG & E v. Lane,* 338 Md. 34, 43, 656 A.2d 307, 311 (1995) (quoting *Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180, 188 (1994)). *See also Todd v. Mass Transit Administration,* 373 Md. 149, 155, 816 A.2d 930, 933 (2003). We have defined duty as " ' "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." ' " *Todd,* 373 Md. at 155, 816 A.2d at 933–34 (quoting *Muthukumarana,* 370 Md. at 486, 805 A.2d at 395 (quoting *Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986))).

■ A common carrier owes its passengers something *more* than an ordinary duty of care during transport. In regard to the degree of the duty a common carrier such as WMATA owes its passengers, Judge Battaglia stated for the Court in *Todd:*

"A common carrier owes its passengers *the highest degree of care* to provide safe means and methods of transportation for them. *See MTA v. Miller,* 271 Md. 256, 259, 315 A.2d 772, 774 (1974); *St. Michelle v. Catania,* 252 Md. 647, 651, 250 A.2d 874, 876 (1969). We succinctly described this heightened duty in *MTA v. Miller,* 271 Md. at 259, 315 A.2d at 774 (1974):

'A common carrier is not an insurer of safety of its passengers, but it is bound to employ the highest degree

of care for their safety, consistent with the nature of the undertaking. It owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety.' "

*Todd,* 373 Md. at 156–57, 816 A.2d at 934 (emphasis added). *Cf. Gunther v. Smith,* 78 Md.App. 508, 553 A.2d 1314 (1989) (operator of hayride at employer-sponsored picnic was not a common carrier, añd thus operator owed passengers of hayride duty of ordinary care under the circumstances). Thus, when a passenger suffers injury while onboard a common carrier, such as a taxi cab, a train, or, as in this case, a WMATA Metrobus, and the passenger thereafter sues the common carrier under a negligence theory, the pivotal question to determine is whether the act of the common carrier that led to the injury, here the rapid acceleration and then the sudden stopping of the bus, under the circumstances, was a negligent act under the heightened duty of care applicable to common carriers in this State.

In *Comm'r of Motor Vehicles v. Baltimore & Annapolis R.R. Co.,* 257 Md. 529, 263 A.2d 592 (1970), this Court was presented with a case in which a passenger was injured when he fell to the floor of the bus he was riding. The specific circumstances leading to the fall were described thus:

"Seeing no traffic ahead or to the right, the bus driver started up [after stopping at a stop sign]. After he had gone about forty feet, he says a small white-topped foreign car [4] cut sharply in front of the bus from the left. The driver stopped the bus in time to avoid contact, and [the passenger] fell to the floor of the bus."

*Id.* at 531–32, 263 A.2d at 594 (alterations added) (footnote added). We affirmed the judgments entered in the Circuit Court, which were entered after the trial judge directed

---

4. The automobile was at times alternatively referred to by this Court as a "phantom car." *Comm'r of Motor Vehicles,* 257 Md. at 530, 263 A.2d at 593.

verdicts for the bus owner and the bus driver at the close of the plaintiff's case. In doing so, we stated:

"We think the trial judge correctly directed verdicts for the owner and driver of the bus. The plaintiff in a negligence action bears the burden of establishing that it was the negligence of the defendant which caused his injuries without disclosing the intervention of any independent factor which caused those injuries. *Jones v. Baltimore Transit Co.*, 211 Md. 423, 426, 127 A.2d 649. A passenger on a bus who is injured as a result of a stop of the bus establishes an inference that the stop was due to negligence of the driver where he shows that the stop was extraordinarily sudden or violent (so long as in doing so there are not shown other circumstances, besides such negligence, which necessitated the stop). *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146, 78 A.2d 464. It is, however, well settled in this State that a passenger on a bus or other common carrier who bases a negligence action on the sudden stop of the carrier cannot establish a case 'merely by adjectival descriptions of the nature of the stop,' but rather must show in addition some 'definite, factual incident' created by the stop which shows it to be so abnormal and extraordinary that it can be legally found to have constituted negligence in operation. *Retkowsky v. Baltimore Transit Co.*, 222 Md. 433, 438, 160 A.2d 791."

*Comm'r of Motor Vehicles,* 257 Md. at 533, 263 A.2d at 594–5. After finding that there was insufficient testimony at trial to establish that a definitive factual incident occurred that would permit the inference that the bus's sudden stop legally constituted negligence, this Court went on to assume, *arguendo,* that even if "the plaintiff sufficiently proved the abnormality and negligence of the stop, there are other facts and circumstances which prevent the inference that the stop was due to the negligence of the driver." *Id.* at 534, 263 A.2d at 595. We then stated that "[r]easonable minds would not disagree that a driver who is confronted with the sudden appearance of another vehicle directly in front of him acts as a reasonably prudent man by stopping as quickly as possible." *Id.* at 534–

35, 263 A.2d at 595.[5]

■ Thus, if exigent circumstances require that a common carrier, *being operated normally and safely,* suddenly stops in an attempt to avoid a collision with an unanticipated and dangerous obstacle on the roadway (be it another automobile, a person, substantial debris, etc.), generally the common carrier will not be liable if one of its passengers is injured as a result of the sudden stop that was made to avoid the advent of a possibly more dangerous situation.

■ As we noted, unlike the factual circumstances before us in *Comm'r of Motor Vehicles,* in the case *sub judice* it was found by the District Court judge that the bus was accelerating abnormally even though the bus driver was aware that the phantom vehicle approaching an exit onto the boulevard had not come to a stop. Thus, a definite factual incident occurred that was caused by the prior rapid acceleration of the bus and then by the sudden stop of the bus, *i.e.,* that Seymour fractured her leg after being thrown from her seat. These facts permit the initial inference that the bus's sudden stop legally constituted negligence. As the District Court judge stated in his remarks at the end of the trial:

"There's no question in my mind that the Plaintiff was ... firmly in her seat. There's no evidence that she was [anywhere] other than in her seat. [T]here was a reason ... that she was thrown out of her seat ... the testimony was that the bus had accelerated, and within a relatively short period of time, I believe the time that [the bus driver] gave was pretty accurate, 60–90 feet, [ ] jammed on his brakes, causing the Plaintiff to ... *significantly fall out of [her] seat,* because testimony was that she rolled up the aisle, [ ] depending on whose estimate you take, eight, ten,

---

5. In *Comm'r of Motor Vehicles, supra,* that facts indicated simply that a vehicle came out of nowhere and there was no evidence of prior abnormal conduct of the bus driver. In the case *sub judice,* the bus driver saw the phantom vehicle and misjudged that it would stop. Additionally, there was evidence that the bus was abnormally accelerating just prior to the sudden stop.

twelve feet, and [ ] *obviously landed with [a] velocity significant enough to have fractured her tibia,* where it entered into the ankle." [Alterations added.] [Emphasis added.]

In the normal operation of a bus, passengers are generally not thrown from their properly seated positions.

■ WMATA's central contention is that the so-called boulevard rule, or boulevard law, which "give[s] preference to drivers on the highways when they encounter other drivers attempting to enter or cross through highways," *Myers v. Bright,* 327 Md. 395, 398 n. 1, 609 A.2d 1182, 1183 n. 1 (1992), shields it completely from liability for Seymour's injuries under the facts as found by the District Court. Whether this contention proves correct will require an examination of the boulevard law and the relevant cases in which it has been of import.

We have stated that the purpose of the boulevard law "is intended to expedite the flow of traffic on the boulevard." *Dean v. Redmiles,* 280 Md. 137, 147, 374 A.2d 329, 335 (1977). The law is currently codified at Maryland Code (1977, 1999 Repl.Vol.), §§ 21–403 & 21–404 of the Transportation Article. Section 21–404 of the Transportation Article, however, is the section relevant to the case now before us. It states, in pertinent part:

"**§ 21–404. Vehicle entering highway from other than a highway; vehicle entering paved highway from unpaved highway.**

(a) *Entering highway from other than a highway—Duty to stop.*—The driver of a vehicle about to enter or cross a highway from a private road or driveway or from any other place that is not a highway shall stop.

(b) *Same—Yielding right-of-way.*—The driver of a vehicle about to enter or cross a highway from a private road or driveway or from any other place that is not a highway shall yield the right-of-way to any other vehicle approaching on the highway."

Because the phantom vehicle was alleged to have entered onto University Boulevard as it exited a shopping center parking lot in close proximity to the approaching bus, as between the driver of the bus and the phantom vehicle, the driver of the phantom vehicle was the unfavored driver in the lexicon of the boulevard law and thus in violation of § 21-404 of the Transportation Article. The bus driver, therefore, was the favored driver, *vis-a-vis* the driver of the phantom vehicle even though the bus driver had seen the phantom vehicle approaching the parking lot exit, but mistakenly believed that the phantom vehicle was going to stop.

■ However, as we explained in *Dean v. Redmiles, supra,* which concerned a fatal accident that occurred when a vehicle traveling on a highway struck another vehicle that had stalled while being backed out of a parking space and onto the highway:

"Cases reaching this Court arising under the boulevard rule fall into eight categories, the suit of the favored driver against the unfavored driver, the unfavored driver against the favored driver, the passenger of an unfavored driver against the favored driver, the passenger of an unfavored driver against both drivers, the passenger of the favored driver against both drivers, the passenger of the favored driver against the unfavored driver, *the passenger of the favored driver against the favored driver,* and, finally, counterclaims so that the favored and unfavored drivers are suing each other."

*Redmiles,* 280 Md. at 144, 374 A.2d at 334 (emphasis added). A claim such as that brought by Seymour, *i.e.,* the passenger of the favored driver against the favored driver, is one of the types of suits generally arising under the boulevard law as it exists in this State.[6]

---

6. There need not be an actual collision between the vehicles of the favored and unfavored drivers for the boulevard law to apply. *See Dunnill v. Bloomberg,* 228 Md. 230, 235, 179 A.2d 371, 374 (1962) (stating "[n]or does the fact that the two vehicles did not collide seem of any moment [to application of the boulevard law]") (alteration added).

One of our first cases to consider the liability of a favored common carrier to its passenger when the passenger is injured during transit was *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194 (1932). In that case, a collision occurred at an intersection between two taxicabs, one of which had run through a red light. Although the taxicab the plaintiff was in had the right of way, and was therefore the favored vehicle, "[t]here was testimony tending to prove that the cab carrying the plaintiff was being driven at an unlawfully high rate of speed...." *Id.* at 478, 163 A. at 194. The passenger of the favored taxicab thereafter sued both the favored and unfavored taxicab drivers for his injuries. We stated that "the principal question is whether that high speed, if proved, could be held to have been a proximate, concurring cause of the collision." *Id.*

In holding that the favored driver could not be held liable to its passenger under the circumstances in *Faulkner,* we explained:

"If negligence is found in the rate of speed at which the Sun cab was being driven, that fact alone does not, of course, answer the question of liability. The negligence must have been the cause of the collision.... The principal cause was, obviously, the unexpected coming through of the Yellow cab, in violation of the right of way. Its doing so was not a consequence of any speed maintained by the Sun cab. Whatever other consequences the speed might have threatened, it could not be said that it threatened to cause a collision with a cab so coming through. On the contrary, the situation created by it, if left to itself, with all its natural consequences, would have been a safe one; and it was only by the intervention of the independent agency that the collision resulted, an independent agency not set in motion or at all influenced by the driving of the Sun cab. That being true, the assumed negligence of the driver of that cab could not be treated as a proximate, legal cause of the accident and injury."

*Faulkner,* 163 Md. at 479–80, 163 A. at 194–95. There was no evidence in *Faulkner* that the speeding cab driver was aware

of the approaching cab, or that it appeared to the speeding driver that the other cab might run a stop light. *See Thompson v. Terry,* 245 Md. 480, 226 A.2d 540 (1967) (alleged excessive speed of favored driver of taxicab was not proximate cause of accident when it swerved and struck a curb and a fire hydrant in an attempt to avoid a collision with an unfavored driver that had entered the intersection); *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A.2d 188 (1956) (alleged excessive speed of favored driver of taxicab on through highway when struck by unfavored driver did not render favored driver and owner of taxicab liable to passenger for injuries sustained in the collision).

A case that WMATA particularly relies upon is *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 78 A.2d 647 (1951), which concerned a bus passenger who was injured when the bus she was riding in came to an emergency stop in order to avoid colliding with a vehicle that had unexpectedly entered into the bus's lane of traffic. The passenger thereafter sued both the bus company and the driver of the vehicle that had entered the boulevard. It was established that at the time of the bus's sudden stop, the bus was the favored vehicle and the intruding vehicle was unfavored. In holding that the bus company could not be held liable for the passenger's injuries, we stated:

"In the instant case we think the bus driver had the right to assume that the other vehicle, in a place of safety by the grass plot, would remain there and yield the right of way. We find no merit in the contention that the bus driver was at fault in failing to observe the automobile when it made its initial stop by the stop sign, nearly 100 feet from the point of impact. . . .

"To argue that the bus driver might have avoided striking the automobile is misleading here, because the plaintiff's injury was due to the sudden application of the brakes by the bus driver, not to the force of the impact, which seems to have been slight. . . . But whether it could have been stopped sooner or not, the proximate cause of the plaintiff's injury was the unexpected intrusion into or blocking of the

eastbound lane by [the unfavored driver]. It was not negligence for the bus driver to make an emergency stop under the circumstances."

*O'Donovan,* 197 Md. at 278–79, 78 A.2d at 649 (alteration added).

Whereas *Faulkner, Terry, Cusick* and *O'Donovan* embrace the principle that the passenger of a favored common carrier generally shall not be able to prevail in a suit against that common carrier when that passenger is injured due to circumstances involving an unfavored driver, we have not stated that the boulevard law acts as an impenetrable shield to the recovery of an injured passenger in a suit against the favored driver. As we stated in *Redmiles:*

"In no case, with the possible exception of *Sun Cab Company v. Cusick,* [ ] has the boulevard law been held to bar recovery from a favored driver in a suit brought by his passenger. Even there, as we have pointed out, *this can hardly be said to be a clear-cut holding that the boulevard law insulates the favored driver from liability to his passenger for negligence.* . . . A favored driver may assume that others will obey the law and he need not anticipate their violation of the law. . . . However, the favored driver may not proceed in complete disregard of obvious danger."

*Redmiles,* 280 Md. at 146–48, 374 A.2d at 335 (citations omitted) (emphasis added).

In *Sun Cab Co. v. Hall,* 199 Md. 461, 86 A.2d 914 (1952), the passenger in a taxicab sued the taxicab company for the injuries she sustained when the taxicab was struck by another vehicle at an intersection in Baltimore City. It was shown that, at the time of the collision, the taxicab enjoyed a favored driver status and the other vehicle involved was unfavored. The plaintiff claimed, however, that the taxicab driver had negligently taken his eyes off of the road in order to talk to a man seated next to the plaintiff and did not see the unfavored driver enter the intersection before it was too late. In our examination of whether the boulevard law would bar the passenger's claim, we stated:

"What we have before us is whether, considering the testimony most favorable to the plaintiffs, there was any evidence of primary negligence on the part of the cab driver. . . . It is earnestly contended by the appellant that the cab driver had the right to assume that the automobile was not going to violate the law, that his inattention, if any, was not negligence under the circumstances, and that when he first became aware that the other vehicle was coming into the intersection, it was too late for him to stop.

. . .

"*Boulevards are posted for the purpose of accelerating traffic, but they are not constituted speedways for reckless drivers who do not watch what is going on.* It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable. . . . *[W]e hold that there was sufficient evidence in this case of the negligence of the cab driver to go to the jury.*"

*Hall,* 199 Md. at 464–67, 86 A.2d at 915–17 (emphasis added).

■ Fourteen years after *Hall,* we once again addressed the boulevard law and its application when the passenger of a favored common carrier brings suit against that common carrier for the injuries sustained while a passenger. In *Yellow Cab Co. v. Bonds,* 245 Md. 86, 225 A.2d 41 (1966), a taxicab collided with the rear of a vehicle in front of it on a boulevard when that vehicle braked suddenly in order to avoid a collision with another vehicle which had unlawfully entered a stop-sign marked intersection. The passenger in the taxicab thereafter brought suit for the injuries she sustained, claiming that, in addition to the negligence of the unfavored vehicle in entering the intersection, the taxicab driver was also negligent in following the car ahead of it too closely, thereby making a collision all but inevitable when the leading vehicle had to brake suddenly at the intersection. This Court framed the arguments before it as follows:

"On appeal, the appellants, claiming that they were entitled to a judgment as a matter of law and that the evidence was legally insufficient to prove that what the cabdriver did was a contributing and proximate cause, contend that the negligence of the operator of the intruding automobile was the sole and proximate cause of the accident. The appellees, on the other hand, claiming that the cabdriver was guilty of negligence, contend that there was ample evidence to show that the cabdriver was following too closely behind the automobile in front of him, that he failed to pay attention to traffic conditions ahead of him and that his negligence in each respect contributed to the happening of the accident."

*Bonds,* 245 Md. at 90, 225 A.2d at 43. In holding that the common carrier could be liable to its passenger even when it was involved in an accident where it enjoyed the status of a favored driver, we stated:

*"That there can be more than one proximate cause of an accident is clearly established.* While the negligence of the cabdriver must have been *a proximate cause* in order to warrant recovery by the passenger, it did not necessarily have to be the sole proximate cause of the accident. The negligence of the operator of the intruding automobile did not excuse the cab owner and driver from liability for damages. It was enough that the negligence of the cabdriver, in concurrence with that of the other motorist, proximately caused or contributed to the injuries the passenger sustained. . . .

"The argument of the appellants is that the boulevard law relieved them from liability because the operator of the cab was the favored driver, *but this fact did not relieve the cabdriver of the obligation to use due care* under the circumstances of this case. Nor did the fact that a concurrent tort-feasor violated the boulevard law affect the claim of the appellee against the appellants."

*Id.* at 90–91, 225 A.2d at 43 (citations omitted) (some emphasis added). Thus, we recognized in *Bonds,* as we had earlier held in *Hall,* that certain factual circumstances could permit a

finding that the common carrier, although a favored driver at the time of the incident leading to a passenger's injury, was liable if the fact finder found that a negligent act of the common carrier was in breach of its higher duty of care to its passenger and was a proximate cause of the accident (or incident leading to the passenger's injury). In other words, the boulevard law does not always work to shield a common carrier from suit by one of its passengers, even where the incident causing injury to the passenger occurs while the common carrier enjoys the status of a favored driver under the boulevard law.

Yet another case dealing with the boulevard law and a suit against a common carrier by one of its passengers was *Greyhound Lines, Inc. v. Alderson*, 26 Md.App. 277, 336 A.2d 811, *cert. denied*, 275 Md. 749 (1975). In *Alderson*, the Court of Special Appeals had before it a case where a Greyhound bus, while enjoying favored status as it proceeded on a boulevard, was involved in a serious accident due to the actions of an unfavored driver. The bus driver noticed a truck had inappropriately pulled from a median into the fast lane of the boulevard (the same lane the bus had been traveling), thus necessitating the bus driver to quickly apply the bus's brakes and swerve to the slow lane to avoid collision with the truck. The sudden braking and changing of lanes caused the bus to slide and overturn into a ditch, killing five passengers and injuring many others. In considering whether the common carrier, even though it enjoyed favored status on the boulevard, could nevertheless be held liable for the injuries suffered by its passengers, the intermediate appellate court stated:

"In concluding that a broad overview of the totality of the evidence adduced below warranted submitting the issue of Greyhound's negligence to the jury, we, of course, recognize that the bus was proceeding upon a boulevard and, thus, Greyhound, as the owner and operator of the favored vehicle, was entitled to all the benefits that flow from Maryland's rigorous 'boulevard rule.' " . . .

"Here, however, the suit is not between the favored and unfavored drivers but is between Greyhound Lines, Inc., a

common carrier, and its paying passengers. *While many aspects of the 'boulevard rule' may come into play in assessing the overall negligence of Greyhound, we think the law is clear that because of its status as a common carrier, Greyhound cannot resort to the boulevard rule, under the circumstances here, as a shield to protect it from the high standards of care owed to its passengers.* 'A bus driver owes passengers the duty to exercise the highest degree of care consistent with the nature of his undertaking.' " *Miller v. Mass Transit Adm.,* 18 Md.App. 220, 222, 306 A.2d 261, 262 [(1973)].

. . .

"While it may well be that the action of [the unfavored driver] in driving his pick-up truck from the median crossing on to [the boulevard] was an act of negligence contributing to the accident, *we do not believe that the jury below, on the state of the evidence before it, was compelled to find that [the unfavored driver's] action was necessarily the sole proximate cause of the accident.*

"The evidence was such that the jury could conclude that the inattentiveness of the bus driver to the hazards of the road condition and the dangers presented ahead by the cars preparing to enter or entering the highway, or the driver's failure to operate the brakes in a safe and reasonable manner, especially in view of the characteristics of the braking system of the bus, in combination or singly, *amounted to a general failure to operate the bus with that high degree of care which the driver owed his passengers.*"

*Alderson,* 26 Md.App. at 285–89, 336 A.2d at 816–18 (alterations added) (emphasis added).

As *Hall, Bonds* and *Alderson* make unmistakably clear, where a passenger on a common carrier suffers injury, and that injury may have been brought about (at least partly) by negligence on the part of the common carrier driver, the common carrier is not shielded from liability by the boulevard law of this State, even where the common carrier enjoyed

favored status on the roadway in respect to the driver of the other vehicle.

Turning to the facts of the case *sub judice,* as found by the District Court judge, we find no reason to overturn that court's finding that the driver of the Metrobus was negligent in his operation of the Metrobus and that this negligence was a proximate cause of Seymour's injury. When asked by the attorney for WMATA about the effect of the boulevard law on Seymour's claim, the District Court judge stated:

"[T]he boulevard rule really wouldn't apply in my opinion. Because your client [WMATA] was in the right lane, a turn lane ... *when this other car was coming out of the driveway.* I just feel that [the bus driver's] negligence occurred [ ] prior to any vehicle being involved. *He was going too fast for the circumstances.* I mean on [a] Saturday morning, the road in front of that ... shopping center is bumper to bumper. *It's my conclusion, after the testimony[,] that he was going too fast for the [ ] circumstances, and when he had to apply his brakes, he had to jam his brakes.*

"Now, forget about a bus, forget about a car. That could have been a dog, it could have been a child, it would have been the same thing. *He should have anticipated what the traffic was going to be like, crossing [ ] the driveway, and that driveway's very close to Riggs Road, which creates another problem.* As a professional driver, he should have anticipated. So, for that reason, I find he's liable...." [Alterations added.] [Emphasis added.] [7]

[10] Even where the boulevard law might come into play and the common carrier may enjoy favored status on a roadway, *the high standard of care required of common carriers toward their passengers does not lessen.* Here, the District

---

**7.** We do not share WMATA's interpretation of the District Court judge's oral ruling to mean he held that WMATA could not assert the boulevard rule as a defense merely because it was a common carrier. Read in sum, the judge explained why, on the facts he found credible, that the bus driver's contemporaneous negligence established WMATA's liability to its passenger notwithstanding the negligence of the unfavored phantom driver.

Court judge found that the Metrobus driver neglected that higher duty of care when he improperly accelerated from the service stop even though the phantom vehicle had not come to a stop at the exit from the parking lot, thus causing certain passengers to be thrown from their seats when the bus made a sudden stop to avoid a phantom vehicle. The bus driver had actually seen the phantom vehicle as it approached the exit driveway, but concluded, mistakenly, that it was going to stop. The phantom vehicle did not stop and it was the combination of the mistaken conclusion of the bus driver and the rate of acceleration of the bus that contributed to the accident at issue.

In effect, the District Court judge found under the specific circumstances here present that the bus's imprudent acceleration under the circumstances was a proximate cause of Seymour's severe injury to her leg. The action of the phantom vehicle, in pulling out from a parking lot directly in front of the oncoming bus, was also a proximate cause of the injury, but, as we have stated, there can be more than one proximate cause of an accident leading to injury.

We agree with the District Court that the circumstances at the time of the incident causing Seymour's injury were such that WMATA cannot shield itself from liability to its passenger under the boulevard law. We find no reason to reverse the holdings of the Circuit Court and the District Court that, under the facts as adduced at trial and accepted by the fact finder, *i.e.*, the District Court judge, the WMATA Metrobus driver's action of rapidly accelerating from a service stop was negligent under the circumstances at the time and was a proximate cause of the injury to Seymour when the bus driver was then required to stop the bus suddenly to avoid the alleged phantom vehicle which improperly entered the boulevard.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**