742 A.2d 1

**Brenda BRENDEL, et al.**

v.

**Ronald ELLIS, et al.**

**No. 6751, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 6, 1999.

Joseph J. Askin, Baltimore, for appellants.

Mark Brown, Towson, for appellee.

Argued before THIEME, SONNER and BYRNES, JJ.

THIEME, Judge.

Appellant Brenda Brendel, mother and next friend of Anthony Eckles, a minor, brings this appeal on a ruling by the Circuit Court for Baltimore City. On January 28, 1999, the court denied appellants' motion for judgment on the issue of liability as a matter of law made at the close of all evidence in an action for negligence against appellee Ronald Ellis. The jury later found that Ellis had not been negligent in causing the traffic mishap in which young Eckles was injured. On February 10, 1999, the circuit court denied appellants' subsequent motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. Brenda Brendel now appeals and presents the following questions:

1. Did the trial court err when it denied appellants' motion for judgment on the issue of liability after the close of all the evidence?

2. Did the trial court err when it denied appellants' post-trial motion?

We answer "yes" to these questions and explain.

## Facts

On November 22, 1995, the Eckles child, then twelve years of age, was a front-seat passenger in an automobile owned by

appellee Joan Brendel, his grandmother, and operated by Ellis, his seventeen-year-old cousin. Ellis was driving the car on West Street in Baltimore City. Both parties agree that when he reached the intersection of West and Hanover Streets, which was marked by a stop sign, Ellis stopped the car. According to his testimony, Ellis then began to "inch" the vehicle across the two northbound lanes of Hanover Street, because his left-hand view was obstructed by a truck parked in the curb lane of that street.[1] Both parties testified that as Ellis crossed the center line a white truck proceeding south on Hanover Street struck the passenger side of the vehicle where Eckles was seated. According to the child, the car spun around, causing him to be thrown about the interior and to be injured, before it was struck by a northbound Jeep.

During his testimony, Ellis explained that he crept out to a spot "maybe a foot or two" past the center line after crossing the northbound lanes of Hanover without seeing any oncoming traffic. Once he "got out far enough, [he] realized there wasn't anything coming," but after he had crossed the center line, he then saw a large white truck coming toward his vehicle. Ellis claimed that when he next attempted to back out of the southbound lanes, the northbound Jeep collided with the driver's side of his vehicle. Immediately thereafter, the white truck struck his car on the fender of the front passenger side.

Young Eckles was taken by ambulance to Harbor Hospital, where x-rays showed he had a fractured clavicle. Doctors treating Eckles placed his right arm in a brace sling, and he received follow-up treatment with Dr. Edwin Fulton, an orthopedic specialist. Eckles testified that physical problems resulting from the accident persist today, and Dr. Fulton attested that the child has a permanent disability.

---

1. Eckles initially testified that he did not remember whether any vehicles were parked in the curb lane on Hanover. In his deposition, however, he recalled seeing a Ryder truck parked in the place where Ellis testified to seeing one.

## Discussion

Because we find from the facts presented by both parties that Ellis was negligent as a matter of law, we reverse the judgment of the trial court and remand this case for the setting of damages. We first dispense with appellees' opening argument that this appeal is improper, then we turn to the issue of negligence.

### *This Appeal Is Proper*

For their opening salvo, appellees claim that this Court cannot entertain an appeal, because appellants failed to state with particularity the grounds for their motion for judgment at the close of all evidence. Appellees claim that appellants' motion failed to meet the Maryland Rule 2–519(a) standard for particularity because it was worded so generally. They point out that appellants' counsel asked for judgment "[o]n the issue of liability" without elaborating on their legal theory. Likewise, they claim that the court below properly denied appellants' motion for judgment *n.o.v.* under Maryland Rule 2–532(a). That rule requires moving parties to have "made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion." In other words, appellees believe that appellants' latter motion should also fail if their earlier motion failed for lack of particularly. *See, e.g., Annapolis Mall Ltd. Partnership v. Yogurt Tree of Annapolis,* 299 Md. 244, 256, 473 A.2d 32, 38 (1984) (holding that the grounds to be advanced for judgment *n.o.v.* are limited to those advanced in support of the earlier motion for judgment). Appellees seek to discredit the former motion to defeat the latter one.

Yet Rules 2–519 and 2–532 exist to ensure basic fairness. As the Court of Appeals explained in *Annapolis Mall,* they lie to "prevent[ ] sandbagging. A movant for a directed verdict is not permitted to withhold a supporting reason until after the verdict when the case may no longer be reopened in order to cure a deficiency in the proof." *Id.,* 473 A.2d at 38. Particularity is required for two reasons. First, the trial

judge must have a reasonable opportunity to consider all arguments when deciding which issues to submit to the jury and when framing jury instructions. Second, other parties must also have a fair opportunity to address all legal and evidentiary challenges and formulate their own trial strategies. *See Kent Village Assoc. Joint Venture v. Smith*, 104 Md.App. 507, 517, 657 A.2d 330, 334–35 (1995). Additionally, we strive to maintain discrete processes for trial and appeal.

Here, however, basic fairness dictates that appellants be allowed to proceed on appeal, for the court below cut off their opportunity to proffer particularized reasoning. After all testimony had concluded and the court began to hear the prayers presented by the parties, the following colloquy took place:

> [APPELLANT'S COUNSEL]: I would, Your Honor, move for a directive [*sic*] verdict[2] on behalf of the plaintiff.
> THE COURT: Wait, wait. We're discussing jury instructions right now.

A few minutes later, after it had finished discussing jury instructions, the court invited appellant's counsel to resume the earlier motion:

> THE COURT: All right. All right. And we have an agreement, much to Mr. Askin's chagrin, that 30 minutes is the amount of time I'm going to give you for closing argument. All right. Now, Mr. Askin, you wanted to make a motion for judgment at this time?
> [APPELLANT'S COUNSEL]: Yes, Your Honor.
> THE COURT: On what issue?
> [APPELLANT'S COUNSEL]: On the issue of liability.
> THE COURT: All right. I'm going to deny your motion and allow the jury to make that determination. All right. Anything else that we need to undertake before we invite the ladies and gentlemen of the jury back? Do you all need a break?

---

**2.** What used to be called a "directed verdict" is known now as a "motion for judgment" under Maryland Rule 2–519.

The court effectively short-circuited appellants' motion by deciding abruptly that the case belonged to the jury rather than entertaining *any* discussion of appellants' contention that Ellis had been negligent as a matter of law. It asked appellants' counsel a question with a specific answer—to which issue did his motion pertain?—and then proceeded to squelch any discussion during which he might have stated with particularity his reasons for making the motion. Appellants contend on appeal that counsel was prepared to argue that Maryland's "boulevard law" foreclosed the issue of "liability," *i.e.*, duty, breach and causation, and that damages would be the only issue properly remaining. We think they are right. Certainly, a simple trial like this one, where the testimony aired no major factual contradictions, presents the court with little risk of sandbagging. Additionally, after it went through the first three elements of proof for negligence, *i.e.*, duty, breach and causation, the court itself told jurors that "in the event you find for the plaintiff on the issue of *liability*, then you must go on to consider the question of damages." The court certainly understood counsel's meaning when he moved for judgment on the issue of liability, and an appeal with this Court lies.

### The Trial Court Erred

Why the trial court did not see fit to sustain appellants' motion for judgment or their follow-on motions is less clear. As we apply the law to the undisputed facts, we clearly see that appellee Ellis was negligent as a matter of law. We thus reverse the judgment of the court below and remand this matter for computation of damages.

■ Under Maryland law, traffic rights-of-way are well established and certain roads or highways are favored. A motor vehicle on a favored road has the right-of-way against a vehicle on an intersecting unfavored road. The driver on the unfavored road must stop before entering the favored road and yield to the driver proceeding on that road, provided that the favored driver is operating his vehicle lawfully. Although he may not ignore obvious danger, the favored driver may

assume that the unfavored driver will stop and yield the right-of-way. *Dean v. Redmiles,* 280 Md. 137, 147–48, 374 A.2d 329, 335–36 (1977).

When a motorist reaches a stop sign at the intersection of his road and another, and the street across which he wishes to proceed does not also have a stop sign, that motorist is traveling on an unfavored road and crossing a favored road. Maryland law clearly articulates his obligations toward drivers on the favored road:

[I]f the driver of a vehicle approaches a through highway, the driver shall:

(1) Stop at the entrance to the through highway; and

(2) Yield the right-of-way to any other vehicle approaching on the through highway.

Maryland Code (1977, 1999 Repl.Vol.), § 21–403(b) of the Transportation Article.[3]

This rule has long been known as the "boulevard law." It facilitates the free flow of traffic on major thoroughfares by preventing interruptions or delays and ensuring the safety of the drivers there. *Dean,* 280 Md. at 147, 374 A.2d at 335. To do so, it burdens drivers who would enter or cross major thoroughfares with a strict but fair duty of care [4] to the

---

3. Section 21–101(u) of the same article defines a "through highway" as:
   [A] highway or part of a highway:
   (1) On which vehicular traffic is given the right-of-way; and
   (2) At the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles on that highway or part of a highway, in obedience to either a stop sign or yield sign placed as provided in the Maryland Vehicle Law.

4. Maryland courts have defined the unfavored driver's duty to yield the right-of-way as "mandatory, positive, and inflexible." *Dean,* 280 Md. at 147, 374 A.2d at 335. *See also Greenfeld v. Hook,* 177 Md. 116, 132, 8 A.2d 888, 895 (1939) ("[I]t is the opinion of this court that ... it is the positive and imperative duty of a person driving an automobile over an unfavored highway, when he approaches an intersecting highway lawfully designated as a 'boulevard' or 'Stop Street,' to stop before entering the intersection, and having stopped, to exercise reasonable care and diligence to discover whether traffic thereon is approaching the intersection, and, having entered the intersection, to yield the right of way to

driver on the favored road to yield the right-of-way and to his own passengers to avoid accidents that would cause them to suffer injuries.[5] *Id.,* 374 A.2d at 336. Additionally, the boulevard law goes to the other liability elements of negligence. Breach, or failure to obey the statute, that causes injuries or damages supports a finding of negligence as a matter of law, regardless of excuse, in the absence of contributory negligence or operation of the last clear chance doctrine. *Id.; Creaser v. Owens,* 267 Md. 238, 245–47, 297 A.2d 235, 239–40 (1972); *Oddis v. Greene,* 11 Md.App. 153, 157, 273 A.2d 232, 235 (1971). If negligence causes injury, the injured plaintiff may recover damages. For negligence to attach as a matter of law, the collision must have occurred as a direct result of the entrance of a vehicle from an unfavored road onto a favored road at an intersection where traffic control devices, such as stop signs or flashing lights, instruct the unfavored driver to yield the right-of-way. *Dennard,* 95 Md.App. at 660, 622 A.2d at 800–01; *Oddis,* 11 Md.App. at 155–57, 273 A.2d 232, 234–35; *Kowalewski v. Carter,* 11 Md.App. 182, 188, 273 A.2d 212, 215 (1971).

The instant case seems to us to be a classic pattern of facts under the boulevard law. The collision occurred as Ellis, traveling on an unfavored "stop street," attempted to cross a favored street. Regardless of the slight inconsistencies between Ellis's testimony and that of his young cousin, it is clear that the two collisions directly resulted from Ellis's presence in the intersection. Even assuming that his testimony is accurate, Ellis cannot rely on his excuse that a large Ryder

---

such traffic, by permitting it to proceed without interruption, and that that duty persists throughout his passage across the favored way."). Since 1970, however, the statutory definition of "right-of-way," section 21–101(r) of the Transportation Article, has specified that the favored vehicle must proceed *lawfully. See Dennard v. Green,* 95 Md.App. 652, 664–65, 622 A.2d 797, 803 (1993) (explaining evolution of the boulevard law), *aff'd,* 335 Md. 305, 643 A.2d 422 (1994).

**5.** *Slutter v. Homer,* 244 Md. 131, 223 A.2d 141 (1966), provides an exception to this firm rule that is, nevertheless, inapplicable here. In *Slutter,* the court imputed the negligence of the daughter-driver to the mother-passenger under the doctrine of *respondeat superior.*

truck, parked in the northbound curb lane, blocked his view of the oncoming Jeep. *See, e.g., Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. 116, 133, 591 A.2d 507, 515 (1991) ("The fact that his view was obstructed did not excuse him; on the contrary it required increased vigilance and caution in order to measure up to the standard of reasonable care under the circumstances then prevailing."); *Dunnill v. Bloomberg,* 228 Md. 230, 235, 179 A.2d 371, 374 (1962) (holding that presence of parked cars did not excuse defendant, but instead "required the exercise of particular caution"). Moreover, even if a truck blocked his left-hand view, Ellis offers no corresponding excuse for his collision with the large truck to his right in the southbound lanes. His effort to "inch" across the intersection did not satisfy his legal obligation to yield, even if jurors chose to believe that it did, and he is " 'left in the position of one who either did not look when he should have, or did not see when he did look, and this, therefore, requires the finding that he was ... negligent as a matter of law.' " *See Shanahan v. Sullivan,* 231 Md. 580, 583, 191 A.2d 564, 565 (1963) (quoting *Henderson v. Brown,* 214 Md. 463, 472, 135 A.2d 881, 886 (1957)). Neither does the record show that Eckles or either driver of a favored vehicle was contributorily negligent. Ellis's breach of duty thus caused both collisions.

In summary, even when we view the evidence in the light most favorable to Ellis, the non-movant here,[6] it plainly shows that, as he attempted to "inch" past the stop sign, he violated section 21–403 and thus breached his duty of care to the other drivers and to Eckles in the passenger seat. Ellis's breach proximately caused his cousin Eckles to be injured, and we now find him negligent. The trial court erred when it did not find likewise. It perpetuated its own error by overruling appellants' motion for judgment *n.o.v.,* or, alternatively, for a

---

6. The court draws all inferences in favor of the non-moving party when considering motions for judgment made at the close of all evidence and judgments *n.o.v. See e.g., Campbell v. Patton,* 227 Md. 125, 134, 175 A.2d 761, 766 (1961); *Baltimore Transit Co. v. Worth,* 188 Md. 119, 123, 52 A.2d 249, 251 (1947).

new trial.[7] We thus reverse and remand to the circuit court for computation of damages.

**JUDGMENT REVERSED AND CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

**7.** In *Quinn Freight Lines, Inc. v. Woods,* 266 Md. 381, 387, 292 A.2d 669, 673 (1972), the Court of Appeals held:

> In the usual boulevard case where the favored driver strikes or is struck by an entering driver within the intersection, there is no question of fact as to the negligence *vel non* of the unfavored driver, and the trial court, when the issue is properly raised in a motion for directed verdict or motion for judgment *n.o.v.,* decides the question of the unfavored driver's negligence as a matter of law.

The Court went on to articulate exceptions for contributory negligence and superseding causes that would break the chain of legal causation. *Id.* at 387–88, 292 A.2d at 673. Neither exception is present here. We have before us "the usual boulevard case."