NESS ET AL. *v.* MALES ET UX.

[No. 28, October Term, 1952.]

*Decided January 8, 1953.*

236

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Jesse Slingluff, Jr.* and *Kenneth C. Proctor,* for appellants.

*Michael Paul Smith* and *W. Lee Harrison,* for appellees.

HENDERSON, J., delivered the opinion of the Court.

These appeals are from judgments in favor of the appellees for damages arising out of a collision between an automobile and a tractor-trailer on the Old York Road. The case was tried before a jury and the sole questions raised are whether the Court erred in refusing to direct verdicts for the defendants or to grant motions for judgments *n.o.v.* The appellants contend that there was no evidence legally sufficient to show that their negligence, if any, was the proximate cause of the accident. The appellants contend that the sole proximate cause of the accident was the failure of the appellees to yield the right of way; the appellees contend that the sole proximate cause was the failure of the appellants to keep their tractor-trailer to the right of the center of the highway.

Old York Road is a boulevard or through highway, the paved portion being 18 feet wide, running generally north and south. The appellants entered it from Gray-

stone Road, which intersects it to the west but "dead-ends" there. Males, who was driving the automobile, made a proper stop at the stop sign and again before entering the paved portion. Both Mr. & Mrs. Males testified they looked to the left but saw no vehicles approaching. Males made a left turn to go north on Old York Road. There is a hill to the north and a curve in the road, so that the visibility is only 200 feet. The speed limit at that time was 50 miles per hour on the favored highway; it has since been reduced to 30 miles per hour. It was a clear, bright day, about 7 P. M. on July 5, 1951, and the roads were dry. Males testified that after he "got straightened out" he saw a tractor-trailer coming south around the curve, about 50 or 60 miles per hour. There was a filling station on the northwest corner, where a truck, headed south, was taking on gas, the owner, Jones, standing at its rear end, off the paved portion. Males testified that when he was 35 feet north of the intersection the rear end of the trailer "jack-knifed" and swung across the center line and struck his car about in the middle of its left side, sweeping it sideways and backwards off the paved portion to the right.

His testimony as to the point of impact is strongly supported by the testimony of a state trooper who investigated the accident. This witness testified that he found skidmarks 171 feet in length. He described the marks in this manner: "In places it was paired and in places it was one; in places it was solid and in places it was jumpy. It is a rough road. * * * In places the skidmarks hit the high places." He fixed the point of impact by debris in the center of Old York Road. From this debris to the point where the skidmarks ended was 51 feet. The skidmarks ended at a point a few feet north of the south side of Graystone Road. If Graystone Road is 18 feet wide (and it appears to be about the same width as Old York Road), the point of impact, therefore, would have been 33 feet north of the north side of Graystone Road. He also testified

that the skidmarks were entirely in the southbound line and did not cross the center line at any point. After the accident the appellees' automobile was wholly north of the north side of Graystone Road.

The appellant Ness testified that he was driving the tractor-trailer at a speed of 35 miles per hour, and put on his brakes when he came over the crest of the hill and around the curve. He was familiar with the intersection and knew it was dangerous because of the bad visibility. He was about 100 feet from the intersection when he saw the appellees' car coming across in front of him at a speed of about 15 miles per hour. He put his brakes on hard; he could not pull to his right because of the parked truck. He admitted that his tractor cleared the automobile. There was room enough to pass between the automobile and the parked truck without touching either. The tractor and trailer were 38 feet long. The extreme left rear of the trailer struck the automobile. When he stopped the rear of his trailer was north of the south side of Graystone Road.

The only other evidence bearing on the collision was that of Mr. and Mrs. Jones. Jones was the owner of the parked truck. He testified that he heard the tractor-trailer coming behind him while he was putting gas in the rear of his truck. He said it was not coming fast but that he left the hose in the tank and jumped into the back of his truck. He saw the appellees' car cutting around the corner. His truck was well north of the intersection and off the paved portion of Old York Road. As the trailer passed him, he saw the appellees' car in the other lane. The automobile left its proper lane and swerved over into the rear of the trailer. "It looked like he came over into Mr. Ness' driveway." Mrs. Jones, who was sitting in the truck, corroborated this testimony. It is argued that they could not possibly have seen this through or around the trailer, which was 8 feet high. We need not dwell upon this version of the accident. The jury evidently did not believe it,

and there was evidence from which the jury could find that the collision was not due to the swerving of the automobile, but was due to the swinging across the center line of the unloaded trailer, bouncing on the rough downhill surface when the air brakes were applied to a vehicle moving at a high rate of speed. Upon this theory the collision was due to the failure of the operator of the tractor-trailer to keep to the right of the center in violation of Sections 182 and 183, Article 66½ of the Code of 1951.

The appellants contend, however, that viewing the evidence in the light most favorable to the plaintiffs, the proximate cause of the accident was the failure of Males to yield the right of way in violation of Sections 198 and 207, Article 66½, Code of 1951. They argue that even if the collision was due to the swinging of the trailer across the center line at a point 35 feet north of the intersection, "that action was not due to any negligence on the part of appellant Ness, but was due to his attempt to avoid an accident made imminent by appellee Males' failure to yield the right of way."

The appellants rely strongly upon the boulevard stop cases discussed in *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47 and *Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 81 A. 2d 617. We have held that the statutory obligation to yield the right of way at a stop intersection, imposed upon the unfavored driver, is not discharged by a mere stop but extends to the entire passage across the favored highway, and that the favored driver using a through highway is not required to slow down at an intersection or bring his vehicle under such control as to be able to stop, upon the assumption that an unfavored driver will fail in his duty. *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537; *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 78 A. 2d 647; *State v. Gosnell,* 197 Md. 381, 79 A. 2d 530. The obligation to yield the right of way is so imperative that even excessive speed by the favored driver, on a highway designed to speed traffic, will not

ordinarily be a contributing factor. In all of these cases, however, the collision occurred at an intersection and was due to the unfavored driver striking the favored vehicle or blocking its way. In the instant case the unfavored vehicle had cleared the intersection and left room for passage. It is not disputed that the unfavored driver had completed his turn and was proceeding north on his proper side of the road immediately before the impact. The point of impact being at least 33 feet north of the intersection, it might be argued that the accident would have happened even if the automobile had never made a turn but had been proceeding north on Old York Road in its proper lane.

The appellants contend, however, that from the point of view of causation, it is immaterial where the accident occurred, if the braking action that made the trailer swing was made necessary by the sudden intrusion of the unfavored vehicle. The contention is predicated on the testimony of Ness that he was only 100 feet from the intersection, and hence in plain view, when Males drove out. But according to Males he had completed his turn before the tractor-trailer came in sight. If the jury believed his version, he could hardly be held negligent in entering and making the turn when the way was clear as far as he could see. The obligation to yield the right of way could hardly demand that he remain there permanently or enter at his peril. Moreover, if Males was on his proper side of the road when the other vehicle appeared at a distance of 200 feet, the jury might properly find that Ness was at fault, not for relying upon his right of way, but for driving at high speed over a hill and around a curve where he knew the visibility was limited, past a filling station where parked vehicles were to be expected and the room for passage might be narrowed. In considering whether this was negligent, the jury could consider all the surrounding circumstances, including the propensity of unloaded trailers to swing when operated downhill on a rough surface. If the situation presented could

properly be described as an emergency, it was largely of his own creation and at least presented a question for the jury. *Cf. Con. Gas Co. v. O'Neill,* 175 Md. 47, 200 A. 359.

We think the testimony permits the inference that this was a passing accident and not an intersectional one. Causation, like negligence, is a jury question where the material facts are controverted.

*Judgments affirmed, with costs.*