885 A.2d 392

**William BARRETT**

v.

**James NWABA.**

**No. 1040, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 31, 2005.

Curtis B. Cooper (Hassan, Hassan & Tuchman, PA, on brief), Baltimore, for appellant.

Lynn Zahurak Ahlers (H. Barritt Peterson, Jr. & Associates, on brief), Towson, for appellee.

Panel DAVIS, KENNEY and MEREDITH, JJ.

Opinion by KENNEY, J.

William Barrett appeals the judgment of the Circuit Court for Baltimore County denying his partial motion for judgment on the issue of James Nwaba's primary negligence under the Maryland boulevard rule. Barrett presents one question for our review, which we have slightly reworded:

> Did the circuit court err in denying his motion for judgment?

Because we answer that question in the affirmative, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

William Barrett and James Nwaba were involved in a two car collision on January 9, 2002, at approximately 5:40 p.m. Barrett was traveling eastbound on Eastern Avenue in Essex, Maryland. In the area of the collision, Eastern Avenue has two eastbound lanes. A median separates the eastbound traffic from the westbound. Barrett was following a large

tractor trailer in the right-hand lane, when both vehicles stopped at a red light at, or before, the intersection of Eastern and Southern Avenues.[1] When the light turned green, Barrett passed the truck in the left-hand lane, and then merged back into the right-hand lane. Barrett's vehicle was struck in the rear passenger door by Nwaba's vehicle as Nwaba attempted to exit a gas station and to turn right onto Eastern Avenue. The collision occurred approximately one-eighth of one mile from the Southern Avenue intersection.

As a result of the accident, Barrett incurred various expenses, including substantial medical bills. On September 4, 2002, Barrett filed a complaint in the District Court of Maryland for Baltimore County, alleging that Nwaba had negligently caused the accident. He sought $25,000 in damages. The case was removed to the Circuit Court for Baltimore County, where a jury trial commenced on March 4, 2004.

At trial, Barrett testified that he passed the truck and traveled four to five car lengths ahead of it before merging back into the right-hand lane. According to Barrett, his entire vehicle had re-entered the right-hand lane and he had driven another three or four car lengths before being struck in the rear passenger's door. Following the collision, Barrett's vehicle ended up in the left lane of Eastern Avenue and struck the center median. Barrett recalled that the collision was "pretty hard," and that he was "knocked unconscious." He sustained injuries to his jaw, neck, and back. Following the accident, Barrett experienced headaches and "popping" of his jaw, which he had not experienced before.

---

1. Officer Bruce Pfeiffer testified that there are two traffic signals on Eastern Avenue approximately one-eighth of one mile before the Crown gas station, from which Nwaba was exiting. The two signals are separated by approximately 100 feet. The signal closest to the gas station is at the intersection of Eastern and Southern Avenues, and the signal immediately to the west is at the intersection of Eastern and Ashby Avenues. At trial, Barrett testified that he stopped on Eastern Avenue at the first of the two traffic signals, "before Southern [Avenue]." Nwaba "believed" that the tractor trailer was stopped at the Southern Avenue signal.

On cross-examination, Barrett said that, although he intended on exiting Eastern Avenue onto North Point Boulevard, which was only two to three blocks from the traffic signal, he passed the truck because he "was not going to wait. He [the truck driver] was just sitting there. When he started taking off, you could see he had such a heavy load, I just proceeded to go around him." The truck had only traveled two to three car lengths from the traffic signal before he was able to pass it and re-enter the right-hand lane. Barrett did not see Nwaba's vehicle before the accident.

Nwaba testified regarding the scene of the accident with the aid of a diagram.[2] He explained that there were two driveways leading into the gas station, an entrance near Southern Avenue, and an exit farther east near Fairview Avenue. He "guessed" that there was a traffic signal at the intersection of Southern and Eastern Avenues and believed that the tractor trailer was stopped there. According to Nwaba, he was attempting to exit onto Eastern Avenue from the driveway near Fairview Avenue. Before exiting, he looked to his left and saw only the tractor trailer in the right-hand lane.[3] He then looked to his right and again to his left, and, believing that it was safe to exit, he proceeded to pull out of the gas station into the right-hand lane. As he exited at "snail's speed," Nwaba heard a "bump." At the time of collision, only one-half of Nwaba's vehicle had entered onto Eastern Avenue. Nwaba never saw Barrett's vehicle or, aside from the tractor-trailer, any other eastbound vehicles on Eastern Avenue. During cross-examination, Nwaba acknowledged that Eastern Avenue was illuminated by artificial light from the gas station so that he could see oncoming traffic. Following the collision, Nwaba's vehicle came to a stop across Eastern Avenue on the curb near Fairview Avenue.

---

**2.** This diagram was not marked for identification and was not offered for admission into evidence. The diagram used by Nwaba, or a copy thereof, is not included in the record.

**3.** Nwaba indicated the location of the tractor trailer in his diagram of the accident scene by "draw[ing] . . . a big rectangle."

The final witness to testify was Officer Bruce Pfeiffer. He arrived at the scene shortly after the collision, and found the two vehicles close to .the median strip in the left-hand lane. He explained that directly before the gas station there are two traffic signals on Eastern Avenue, which were separated by approximately 100 feet. The signal immediately before the gas station was located at Southern Avenue and further west, there is a signal at Ashby Avenue. According to Officer Pfeiffer, the accident occurred approximately one-eighth of one mile from Southern Avenue. From the "debris scatter," Officer Pfeiffer determined that the "area of impact" was "nine foot ten inches north of the south curb of Eastern [Avenue]," and that the right-hand lane "at that particular location is nineteen f[ee]t eight inches wide." There were no skid marks at the scene of the accident. Following the collision, Officer Pfeiffer testified that Barrett's vehicle traveled eighty-seven feet before coming to a stop at the center median.

When Officer Pfeiffer interviewed Barrett at the hospital, Barrett reported that he was proceeding east on Eastern Avenue when he stopped at the traffic light at the intersection of Southern and Eastern Avenues. When the signal permitted, Barrett continued east when a car reportedly pulled from the gas station and struck his vehicle in the passenger side. Although Officer Pfeiffer made a diagram from his accident investigation, the diagram, marked for identification as Defendant's Exhibit 11, was not admitted into evidence. Officer Pfeiffer did not testify as an expert and gave no opinion as to the cause of the accident.

At the close of all evidence, Barrett moved for partial judgment on the issue of Nwaba's primary negligence pursuant to Maryland Rule 2–519.[4] He argued that the undisputed evidence established that he was in the right-hand lane for

---

4. Barrett actually moved for a "direct verdict." "What used to be called a 'directed verdict' is known now as a 'motion for judgment' under Maryland Rule 2–519." *Brendel v. Ellis,* 129 Md.App. 309, 314 n. 2, 742 A.2d 1 (1999).

three to four car lengths at the time Nwaba pulled onto Eastern Avenue and struck his vehicle. Therefore, the Maryland boulevard rule, codified at Maryland Code (1977, 2002 Repl.Vol.), §§ 21-403-21-404 of the Transportation Article ("Trans."), imposed on Nwaba a duty to yield to the traffic on Eastern Avenue and because he failed to do so, Nwaba was negligent as a matter of law. Accordingly, Barrett requested that the court find Nwaba negligent and submit only the issue of Barrett's contributory negligence to the jury.

In denying Barrett's motion, the court noted that the jury need not credit Barrett's undisputed testimony and that the jury could possibly conclude, based upon the other evidence presented, that Nwaba was not negligent in attempting to enter Eastern Avenue.

On March 5, 2004, the jury found that Nwaba was not negligent and therefore, did not consider whether Barrett was contributorily negligent. On March 15, 2004, within ten days of the entry of the judgment, Barrett filed a motion for judgment notwithstanding the verdict under Rule 2-532 and, alternatively, a motion for a new trial pursuant to Rule 2-533. The circuit court denied both motions on June 11, 2004. This timely appeal followed.

## STANDARD OF REVIEW

Pursuant to Maryland Rule 2-519(a), "A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all of the evidence. The moving party shall state with particularity all reasons why the motion should be granted." " '[T]he trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, *in the light most favorable to the party against whom the motion is made.* If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied....' " *Tate v. Bd. of Ed. of Prince George's County,* 155 Md.App. 536, 545, 843 A.2d 890

(2004) (quoting *James v. General Motors Corp.,* 74 Md.App. 479, 484–85, 538 A.2d 782 (1988)) (emphasis in *Tate* ).

 We review a trial court's grant of a motion for judgment under the same analysis used by the trial court. *Moore v. Myers,* 161 Md.App. 349, 362, 868 A.2d 954 (2005). In other words, " '[w]e assume the truth of all credible evidence on the issue, and all fairly debatable inferences therefrom, in the light most favorable to the party against whom the motion is made.' " *Id.* (quoting *Tate,* 155 Md.App. at 544, 843 A.2d 890) (alteration in *Moore* ).

## DISCUSSION

According to Barrett, the evidence, even when viewed in the light most favorable to Nwaba, established that Barrett was the favored driver on a highway and that Nwaba, upon attempting to enter that highway, failed to yield as required by the "boulevard rule." Barrett, therefore, contends that the circuit court erred in denying his "motion for judgment with regard to [Nwaba's] negligence as a matter of law." We agree.

 The so called boulevard rule, codified at Trans. §§ 21–403–21–404, imposes a duty upon a driver entering or crossing a highway from another highway, private roadway, driveway, or other place to stop and yield the right-of-way to any through traffic on the highway. *Washington Metro. Area Transit Auth. v. Seymour,* 387 Md. 217, 227, 874 A.2d 973 (2005). Transportation § 21–101 defines "[r]ight of way" as "the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian." Because Nwaba was attempting to enter Eastern Avenue from a private parking lot or driveway, Trans. § 21–404 is applicable in the instant case. *Seymour,* 387 Md. at 228, 874 A.2d 973. Section 21–404 is given the same interpretation as § 21–403, which applies to vehicles entering or crossing from another highway. *Dean v. Redmiles,* 280 Md. 137, 143, 374 A.2d 329 (1977).

■ The purpose of the boulevard rule is " 'to accelerate the flow of traffic over through highways by permitting travellers thereon to proceed within lawful speed limits without interruption.' " *Covington v. Gernert*, 280 Md. 322, 324, 373 A.2d 624 (1977) (quoting *Greenfeld v. Hook*, 177 Md. 116, 132, 8 A.2d 888 (1939)). As the Court of Appeals explained in *Belle Isle Cab Co. v. Pruitt*, 187 Md. 174, 49 A.2d 537 (1946),

"That purpose would be completely frustrated if such travellers were required to slow down at every intersecting highway, and the vast sums which have been spent in their construction in an effort to accommodate the great volume of automobile traffic which is so indispensable a part of modern life, would be largely wasted. On the other hand the safety of the travelling public demands that the rules defining the relative rights of travellers on through highways and on highways intersecting them be clear, unmistakable and definite. If the duty of stopping and yielding right of way, is positive and inflexible, the inhibited traveller on the favored highway may know that he may safely exercise the privilege of uninterrupted travel thereon which the statute gives. If, however, the relative rights of travellers on the two types of highway are held to depend upon nice calculations of speed, time, and distance the rule would encourage recklessness and the privilege of uninterrupted travel would mean little more than the privilege of having a jury guess in the event of a collision whose guess was wrong."

*Id.* at 179, 49 A.2d 537 (quoting *Greenfeld*, 177 Md. at 125, 8 A.2d 888). "The duties to stop and to yield are separately stated in the statute, though they are certainly co-ordinate: the former is required to enable one to make the observations necessary to comply with the latter." *Goosman v. A. Duie Pyle, Inc.*, 206 F.Supp. 120, 125 (D.Md.1962).

As originally interpreted and applied, the boulevard rule imposed a positive and exacting "duty o[n] the unfavored driver to yield the right of way . . . to traffic on the whole of the favored road." *Creaser v. Owens*, 267 Md. 238, 243, 297 A.2d 235 (1972). Because the favored driver has a right to

assume that the unfavored driver will abide by his duty, "if the unfavored driver failed to yield the right-of-way and a collision ensued, the unfavored driver was absolutely liable as a matter of law." *Mallard v. Earl*, 106 Md.App. 449, 457, 665 A.2d 287 (1995). Accordingly, the unfavored driver could only escape liability when sued by the favored driver if the evidence established that the favored driver was contributorily negligent and the unfavored driver did not have the last clear chance to avoid the collision. *Creaser*, 267 Md. at 244, 297 A.2d 235.

The General Assembly's adoption of a definition of "right-of-way" in 1971 that protected the favored driver only when operating in a lawful manner eased the sometimes harsh effects of an absolute application of the boulevard rule by relieving an unfavored driver of liability where the evidence established that the favored driver's unlawful conduct was a proximate cause of the collision. *Mallard*, 106 Md.App. at 457, 665 A.2d 287. *See also Gazvoda v. McCaslin*, 36 Md.App. 604, 612, 375 A.2d 570 (1977) ("The departure from the past arises when the favored driver is not proceeding in a lawful manner. Then the boulevard rule no longer applies, and the favored driver is not entitled to preference over the unfavored driver.").

Relying upon the revised definition of "right-of-way" and its attendant modification of the boulevard rule, Nwaba asserts that the circuit court did not err in denying Barrett's motion for judgment because there was sufficient evidence presented to establish that Barrett was operating in an unlawful and negligent manner. Quoting *Gazvoda*, 36 Md.App. at 613, 375 A.2d 570, Nwaba argues that, " 'if there is evidence sufficient to permit a finding of fact that the favored driver was proceeding in a manner that was not lawful, then it is for the jury to determine whether the favored driver has lost his statutory preference.' "

In *Dennard v. Green*, 335 Md. 305, 643 A.2d 422 (1994), however, the Court of Appeals explained that the expanded definition of "right-of-way" was not a significant departure

from the application of the boulevard rule because Maryland courts "had never absolved a favored driver from all of the consequences of his or her unlawful driving while on the boulevard"; " 'if it can be shown that the favored driver could have avoided the accident if he had been operating lawfully and with due care, then the negligence of the favored driver should be an issue for the jury.' " *Id.* at 312–13, 314, 643 A.2d 422 (quoting *Kopitzki v. Boyd,* 277 Md. 491, 496, 355 A.2d 471 (1976)). The *Dennard* Court further reasoned that,

> when all of the potentially negligent parties are before the court, no jury issue as to the proximate cause can be presented unless there is a factual issue as to which of those parties caused the accident, unless the evidence permits more than one conclusion to be drawn, that is, the evidence and the inferences from it are conflicting in that regard. As between the favored driver and the unfavored driver, such a jury issue is presented only "if the circumstances permit the application of the doctrine of last clear chance," or the evidence is such as to permit, but not require, the jury to find "that the favored driver's negligence was a proximate cause of the accident."

*Dennard,* 335 Md. at 319, 643 A.2d 422 (internal citations omitted).

In a case where the favored driver is suing the unfavored driver, once the plaintiff establishes that he was driving lawfully on the favored highway, the burden shifts to the defendant to produce evidence legally sufficient to create a factual dispute regarding the lawfulness of the plaintiff's actions or, in the absence of a statutory violation, the plaintiff's contributory negligence. When the defendant fails to meet that burden, no issue for the jury is created, and if the plaintiff moves for judgment, the trial court must find the defendant negligent as a matter of law.

In the instant case, Barrett clearly met his obligation to establish that he was operating his vehicle lawfully on the favored highway. He testified that he exited from Interstate 95 onto Eastern Boulevard and followed the tractor-trailer on

Eastern Avenue for approximately one mile. He stopped at a traffic signal at, or just before, the intersection with Southern Avenue. He proceeded east when the signal permitted, and while passing the truck, he used his indicator lights. According to Barrett, there were no cars to his left and no cars in front of the tractor trailer. He passed the truck by four or five car lengths before returning to the right-hand lane, and he had traveled in that lane three to four additional car lengths before being struck by Nwaba, who was entering Eastern Avenue from an unfavored private driveway. He had an unobstructed view of the gas station, but he never saw Nwaba's vehicle before being struck in the rear passenger door.

On direct examination, Nwaba testified that he looked twice to his left to see oncoming traffic, but he did not see Barrett's vehicle. He only saw a tractor trailer in the right-hand lane. Nwaba stated that, at the time of the collision, "almost half of [his vehicle]" was still in the gas station parking lot.

Because he was attempting to enter the through highway from a private driveway, Nwaba had a duty to stop and yield to *all traffic* on the through highway and that duty "extend[ed] to the entire passage across the favored highway." *Shriner v. Mullhausen,* 210 Md. 104, 114, 122 A.2d 570 (1956). Nwaba's duty to yield continued until he joined the flow of traffic on Eastern Avenue, which, according to his own testimony, he had not done before the collision.

■ To be sure, the boulevard rule "does not impose upon the unfavored driver the impossible duty of yielding to vehicles the approach of which he cannot discover by making the required stop and using care." *Standard Oil Co. v. Sheppard,* 148 F.2d 363, 364 (D.C.Cir.1945) (applying Maryland law). *See also Ness v. Males,* 201 Md. 235, 240, 93 A.2d 541 (1953) ("The obligation to yield the right of way could hardly demand that [t]he [unfavored driver] remain there permanently or enter at his peril."). Although Nwaba claimed to have stopped and looked at the oncoming traffic on Eastern Avenue, there was no evidence presented that Nwaba could not

have detected Barrett's vehicle through the exercise of due diligence. Nwaba testified that the highway was illuminated by sufficient artificial light to allow him to detect oncoming traffic. There was no evidence that Nwaba's view was obstructed by the terrain or surrounding structures. To the contrary, Officer Pfeiffer testified that Eastern Avenue sloped downward to the east.

At most, the evidence might support an inference that, at the time Nwaba looked to the left, Barrett's vehicle was not visible because he was passing the tractor-trailer, but the Court of Appeals has opined that, where the unfavored driver's view is obstructed, "it required increased vigilance and caution in order to measure up to the standard of reasonable care under the circumstances then prevailing." *Atlantic Mut. Ins. Co. v. Kenney*, 323 Md. 116, 133, 591 A.2d 507 (1991). The Court of Appeals has held also that a party is negligent when he "either did not look when he should have looked or ... did not see when he did look." *Redmiles*, 280 Md. at 168, 374 A.2d 329.

*Brendel v. Ellis*, 129 Md.App. 309, 742 A.2d 1 (1999), is instructive. There, the plaintiff, a minor child, was a passenger in the unfavored vehicle being driven by a relative, the defendant. The defendant approached an intersection, at which he was required to stop. After stopping, the defendant's view of the through highway was obstructed by a truck parked nearby. He inched forward to obtain an unobstructed view, and after he crossed the center line of the through highway, his vehicle was struck on the passenger's side by a vehicle traveling on the favored highway. At the close of all evidence, the plaintiff moved for judgment requesting the court to find the defendant negligent as a matter of law. The circuit court denied the motion, and a jury later found that the defendant was not negligent. *Id.* at 315, 742 A.2d 1.

On appeal, this Court determined that, under the boulevard rule, the unfavored driver could not escape liability by asserting that he could not see the favored vehicle because his view of oncoming traffic was blocked. *Id.* at 317, 742 A.2d 1.

Instead, we noted that, in such instances, the unfavored driver had a heightened standard of care. *Id.* at 318, 742 A.2d 1. The *Brendel* Court concluded that the unfavored driver's legal duty to yield was not satisfied by "inching" into the favored highway, "even if jurors chose to believe that it did, and [the defendant] [wa]s 'left in the position of one who either did not look when he should have, or did not see when he did look, and this, therefore, requires the finding that he was . . . negligent as a matter of law.' " *Id.* (quoting *Shanahan v. Sullivan,* 231 Md. 580, 583, 191 A.2d 564 (1963)).

▇▇▇▇▇ Here, we must determine whether Nwaba produced evidence legally sufficient to create a factual dispute to defeat Barrett's motion for judgment and create an issue for the jury. " '[I]f there be any evidence, however slight, *legally sufficient* as tending to prove negligence, . . ., the weight and value of such evidence will be left for the jury.' " *Myers v. Bright,* 327 Md. 395, 399, 609 A.2d 1182 (1992) (quoting *Fowler v. Smith,* 240 Md. 240, 246, 213 A.2d 549 (1965)) (emphasis in *Fowler;* alteration in *Myers* ). That the evidence be "legally sufficient" means " 'that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value.' " *Myers,* 327 Md. at 399, 609 A.2d 1182 (quoting *Fowler,* 240 Md. at 247, 213 A.2d 549).

We are not persuaded that Nwaba produced evidence that was legally sufficient to demonstrate unlawful conduct or negligence attributable to Barrett. Although it is well settled that the trier of fact is not bound to accept a witness's testimony as true if it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous, in the instant case, Nwaba produced no evidence to rebut Barrett's testimony that he was operating lawfully. There was no direct evidence that Barrett was speeding, failing to use his headlights or indicator lights, changing lanes when it was not safe to do so, swerving across both lanes of the highway, or

otherwise operating in an unreasonable manner.[5] Nwaba testified that he never saw Barrett's vehicle until the collision.

At oral argument, counsel for Nwaba asserted that evidence of Barrett's excessive speed was somehow demonstrated by the eighty-seven feet his vehicle traveled after the collision. Not only was there no effort made to calculate speed and distance traveled, but the evidence also established that Nwaba's vehicle, allegedly moving at a "snail's pace," came to a stop near Barrett's vehicle in the left-hand lane of Eastern Avenue. As noted, Nwaba also claims that there was evidence that, at the time of the accident, Barrett was making an unsafe lane change.[6] But, all of the evidence established that the collision occurred in the middle of the right-hand lane and that Barrett's vehicle was struck in the rear passenger's door. There was no testimony, lay or expert, that Barrett, in passing the tractor-trailer, could not have safely and legally effectuated a lane change in the approximate one-eighth of a mile from

---

5. We note that Officer Pfeifer's diagram, marked as Defendant's Exhibit 11, was excluded from evidence and its exclusion is not contested in the current appeal. Officer Pfeifer, although trained in accident reconstruction, did not testify as an expert and did not provide an opinion regarding the proximate cause of the collision.

At oral argument, counsel for Nwaba also claimed that the jury saw Nwaba's diagram, which was evidence that permits an inference of an unsafe lane change. This diagram was never marked for identification or offered into evidence and is not included in the record. The Court of Appeals has previously cautioned counsel that,

[w]hen a witness testifies from, or concerning an exhibit, a party anticipating possible appellate review, should be careful to show the specific exhibit to which the witness is referring at any time during the course of his testimony. And when a witness says "over in here" or "this little space outlined in black" . . ., indicating a location on an exhibit, the record should show the location to which the witness is referring.

*Board of County Comm'rs for Prince George's County v. Meltzer*, 239 Md. 144, 147, 210 A.2d 505 (1965). In any event, the record indicates that Nwaba never used the diagram to estimate the location of Barrett's vehicle, the location of the collision, or to explain how he believed the collision occurred.

6. Transportation § 21–309(b) provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from that lane or moved from a shoulder or bikeway into a lane until the driver has determined that it is safe to do so."

the Southern Avenue intersection and the point of impact. Even if we were to assume that something more than a scintilla of evidence was presented by Nwaba, a finding of unlawful or negligent conduct on Barrett's part would be based on conjecture and require, as to the two vehicles, speculation as to the related factors of time, speed, and distance.

Barrett testified that his view was unobstructed and that he did not see Nwaba. It may be argued that, if Nwaba was negligent for failing to see Barrett, Barrett was similarly negligent for failing to see Nwaba. To be sure, the boulevard rule does not confer upon the favored driver " 'an absolute, unqualified and complete right of way at all times and under all circumstances over persons who have lawfully entered the street. . . . he can[not] proceed in blind indifference to the danger to which his progress may expose others.' " *Harper v. Higgs*, 225 Md. 24, 32, 169 A.2d 661 (1961) (quoting *Greenfeld*, 177 Md. at 130, 8 A.2d 888). Because Barrett was the favored driver, however, even if he saw Nwaba's vehicle preparing to exit the gas station, absent evidence to the contrary, he would have no reason to expect that the vehicle would appropriate the right of way. *Quinn Freight Lines, Inc. v. Woods*, 266 Md. 381, 390, 292 A.2d 669 (1972). *See also Sonnenburg v. Monumental Motor Tours*, 198 Md. 227, 234, 81 A.2d 617 (1951) ("The driver of a taxicab or any other driver is not under a duty to anticipate, in the absence of evidence, that other drivers will often-or ever-cross negligently in violation of the boulevard law."). Here, there simply was no evidence of anything that would cause Barrett to anticipate or to realize that Nwaba would, or had, entered the roadway.

In *Myers*, a boulevard rule case decided after the amended definition of "right-of-way," the Court of Appeals held that the unfavored driver defendant failed to produce sufficient evidence to submit the issue of the favored driver plaintiff's contributory negligence to the jury, where the plaintiff admitted that she may have been driving "about 40 [miles per hour,]" on a section of road where the speed limit was 30 miles

per hour. 327 Md. at 404, 609 A.2d 1182. The *Myers* Court reasoned that, even if it assumed that the plaintiff had been speeding, there was insufficient evidence to demonstrate that her excessive speed was the proximate cause of the accident. *Id.* at 407–09, 609 A.2d 1182.

If the boulevard rule is to maintain any relevance in Maryland's motor tort law, an unfavored driver cannot avoid liability and create a jury issue of the favored driver's contributory negligence merely by asserting that he did not see the favored driver when attempting to enter the favored highway. Absent legally sufficient evidence that the plaintiff was acting unlawfully or was otherwise contributorily negligent, the unfavored driver must demonstrate that, even through the exercise of due care, the circumstances were such that he could not have seen the favored vehicle, could not have otherwise avoided the collision, or that his or her failure to yield was not the proximate cause of the collision.

Nwaba failed to create an issue for the jury, and thus, was negligent as a matter of law. Where the boulevard rule applies and there is no jury issue regarding the plaintiff's contributory negligence or the doctrine of last clear chance, the only issue for the jury is damages. *See Brendel*, 129 Md.App. at 319 & n. 7, 742 A.2d 1. We, therefore, reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**