920 A.2d 66

CONTINENTAL CASUALTY COMPANY

v.

KEMPER INSURANCE COMPANY, et al.

No. 2771, Sept. Term, 2005.

Court of Special Appeals of Maryland.

April 2, 2007.

Jeffrey R. Schmieler, Silver Spring, for appellant.

Elizabeth Fisher (Alan R. Siciliano, on brief), Lanham, for appellee.

Panel DAVIS, KRAUSER and SHARER, JJ.

SHARER, J.

The interpretation of an exclusion in a business automobile liability policy forms the basis of this appeal and the underlying litigation. Appellee, Kemper Insurance Company, sought a declaration, in the Circuit Court for Prince George's County, of its rights, vis-a-vis appellant, Continental Casualty Company.

Following a bench trial, the circuit court entered a declaratory judgment in favor of Kemper, ruling that Continental wrongfully denied coverage under the policy in question, and awarded damages to Kemper, plus attorney's fees.

Disenchanted with that result, Continental has noted this appeal, and raises a single issue for our review, which, as slightly rephrased is:

1. Whether the circuit court erred in determining as a matter of law that Continental's Business Auto Liability Policy, issued to Jani–King International, did not exclude insured's employee, Robert Piazza, as an insured.

Concluding that the circuit court erred, we shall reverse.

## BACKGROUND

The events giving rise to the litigation below are undisputed. On July 25, 1996, Robert Piazza and Thelma Green, operating separate vehicles, were involved in a collision in Prince George's County. At that time, Piazza was an operations manager for Jani–King International, Inc. ("Jani–King"), and was returning to the company's Virginia offices after visiting a client in Waldorf, Maryland. Crucial to the issue in this case, Piazza was driving his own vehicle. Green filed a lawsuit against Piazza and her insurance company, Kemper,

seeking damages for injuries sustained as a result of the accident. Although the parties stipulate that Piazza was in the employ of Jani–King at the time of the collision, Green did not name Jani–King as a defendant under an agency or respondeat superior theory.

On February 17, 2003, the underlying motor tort claim was settled, calling for Green to be compensated in the amount of $240,000. Of that amount, $100,000 was paid by Piazza's personal auto insurance carrier, Allstate Insurance Company. The remaining $140,000 was paid by Kemper, under Green's uninsured/underinsured motorist policy. Kemper paid the settlement amount after Continental declined to defend or indemnify Piazza, based upon a policy exclusion that we will discuss.

On May 14, 2004, Kemper filed a complaint for declaratory judgment, seeking a declaration that Continental's contract with Jani–King covered Piazza at the time of the collision. Kemper sought recovery of the $140,000 underinsured motorist payment made to Green, together with costs and counsel fees.

A bench trial was held on September 8, 2005. At trial, the circuit court received exhibits and stipulated facts. Thereafter, both parties submitted supplemental memoranda in support of their contrasting positions.

The circuit court entered a written order on January 30, 2006, ruling, *inter alia*, "[t]hat Robert Piazza was an insured under [Continental's] Policy ... [and][t]hat the denial of coverage by [Continental] ... [was] invalid and unenforceable under Maryland law." The order required Continental to pay $140,000 to Kemper, as well as attorneys' fees incurred by Kemper "based upon the wrongful denial of coverage."

Continental filed a motion to alter or amend on February 13, 2006, which was denied by a written order filed on March 9, 2006. In the interim, this appeal was filed on

February 24, 2006.[1]

## STANDARD OF REVIEW

We review the decision of a circuit court, sitting without a jury, as prescribed by Md. Rule 8–131(c):

> (c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witness.

▆▆▆ Appellant challenges the decision of the circuit court granting appellee's motion for judgment. "We review a trial court's grant of a motion for judgment under the same analysis used by the trial court." *Barrett v. Nwaba*, 165 Md.App. 281, 290, 885 A.2d 392 (2005). Applying that standard, " 'we assume the truth of all credible evidence on the issue, and all fairly debatable inferences therefrom, in the light most favorable to the party against whom the motion is made.' " *Id.* (citing *Moore v. Myers*, 161 Md.App. 349, 362, 868 A.2d 954 (2005)).

Insurance policies are contracts and are treated and construed like other contracts. *Harleysville Mut. Ins. Co. v. Zelinski*, 393 Md. 83, 88, 899 A.2d 835 (2006). Because the interpretation of a contract is ordinarily a question of law for the court, it is subject to *de novo* review by an appellate court.

---

1. Appellant filed a motion to alter and amend, and subsequently filed a notice of appeal before the circuit court ruled on appellant's motion. "[T]he filing of post trial motions deprives an otherwise final judgment of its appealability until such motions of appealability have been resolved." *Waters v. Whiting*, 113 Md.App. 464, 471, 688 A.2d 459 (1997). Although appellant's notice of appeal was premature, we have held that "a notice of appeal filed prior to the withdrawal or disposition of a timely filed motion under Rule 2–532, 2–533, or 2–534, is effective. Processing of that appeal is delayed until the withdrawal or disposition of the motion." *Id.* at 475, 688 A.2d 459. Here, the appeal was delayed until the trial court entered its order denying appellant's Rule 2–534 motion on March 9, 2006, which became the effective date of the appeal.

*Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.,* 380 Md. 285, 300–01, 844 A.2d 460 (2004).

## CONTINENTAL'S INSURANCE POLICY ISSUED TO JANI–KING

The language of the insurance contract between Jani–King and Continental at issue in this litigation is found in Section II of the policy, also labeled "Liability Coverage." That section states in pertinent part:

### A. COVERAGE

[Continental] will pay all sums an **"insured"** legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

\* \* \*

We have a right and duty to defend an **"insured"** against a "suit" asking for such damages.

\* \* \*

### 1. WHO IS AN INSURED

The following are **"insureds"**:

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow **except:**

\* \* \*

(2) Your employee if the covered "auto" is owned by that employee or a member or his or her household.

(Emphasis added).

Section I of the policy clearly defines "Covered Autos" to include any automobile. Therefore, the only determination that the circuit court was required to make, and which we must make *de novo,* is whether Piazza, operating his own vehicle while conducting his employer's business, was an "insured" as defined in the policy.

## GOVERNING LAW

■■■ When interpreting insurance contracts, we will apply the substantive law of the place where the contract was made, under the doctrine of *lex loci contractus*. *Cooper v. Berkshire Life Ins. Co.*, 148 Md.App. 41, 55, 810 A.2d 1045 (2002). "A contract is made in the place where the last act occurs necessary under the rules of offer and acceptance to give the contract a binding effect." *Id.* "The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. 71, 77, 552 A.2d 908 (1989). It is not disputed that the operative policy was delivered to Jani–King in Dallas, Texas. Thus, Texas law governs the interpretation of the contract. We note, in passing, that Texas law concerning the interpretation of insurance contracts is not dissimilar to that of Maryland.

**Whether the circuit court erred in determining as a matter of law that Continental's Business Auto Liabililty Policy, issued to Jani–King International, did not exclude insured's employee, Robert Piazza, as an insured.**

■■ Continental disputes the ruling of the circuit court that Piazza was an "insured", as the term is defined in the policy, and argues that the language of the policy plainly and unambiguously excludes Piazza from the definition of "insured," and therefore from liability coverage. Kemper, in contrast, argues that the language of the policy exclusion is ambiguous and, therefore, the policy should be construed against Continental as the drafter. Kemper further asserts that the policy cannot, at the same time, cover Piazza's automobile and exempt Piazza himself from coverage. In the alternative, Kemper argues that an interpretation that excludes Piazza from coverage is contrary to public policy.

We begin by considering the language of the insurance policy. Texas law requires that insurance contracts be interpreted following general rules of contract construction. *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 899 (Tex.App.2006).

For determining whether an insurance contract is ambiguous, the Texas Supreme Court provides the following:

> If policy language can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and we construe it as a matter of law. Whether a contract is ambiguous is itself a question of law. An ambiguity does not arise simply because the parties offer conflicting interpretations of the policy language. Rather, an ambiguity exists only if the contract is susceptible to two or more reasonable interpretations.

*Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex.2004).

The Continental policy defines an "insured" as:

a. You [2] for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow *except:*

(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) *Your employee if the covered "auto" is owned by that employee or a member of his or her household* . . .

(Emphasis added).

It is Continental's position that Piazza falls under the second exception listed above, and that the exception specifically excludes employees who are driving an automobile owned by the employee, or by the employee's family member. Although Kemper argues ambiguity, it offers no alternative meaning or interpretation of the exclusion. Kemper instead argues that the ambiguity is created when the exception is read together with the inclusive language requiring "all autos" to be covered. Specifically, Kemper asks "[w]hat possible difference could it make that an employee is driving a company-owned car rather than the employee's automobile when any auto is covered[?]"

---

**2.** "You" is defined elsewhere in the policy as meaning "the Named Insured shown in the Declarations," or Jani–King.

As a pragmatic concept, that position may make sense. However, our determination must be made in terms of the policy language, not in a vacuum.

We have found no prior case law from either Texas or Maryland that has interpreted the specific language at issue in this case, nor have the parties referred us to any. The appellate courts of other states, however, have addressed this exact language. In *Etienne v. Nat'l Auto. Ins. Co.*, 759 So.2d 51, 55 (La.2000), the Supreme Court of Louisiana held that the named insured's employee was not an "insured" under the liability coverage of a commercial automobile policy while she was driving her own car in the course and scope of employment. The *Etienne* court was called upon to interpret a contract clause identical to that contained in the Continental policy, defining "insured" to include permissive users *except* employees using a covered auto owned by the employee. *Id.* The court based its conclusion on the principle that, "[a]bsent conflict with statutory provisions or public policy, 'insurers, like other individuals are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.'" *Id.* at 54. (quoting *Magnon v. Collins*, 739 So.2d 191, 196 (La.1999)).

Interpreting the same contract language, the Indiana Court of Appeals held that "[t]his language indicates that an insured for a covered automobile can be an employee, unless that employee is driving his or her own vehicle." *Zurich–American Ins. Group v. Wynkoop*, 746 N.E.2d 985, 989 (Ind.Ct.App. 2001). Reviewing the same language, the Court of Appeals of Minnesota held that "the question of *who* is an insured is entirely different from the question of *what* is covered. The fact that [the employee's] car is covered has no effect on who is an insured. Similarly, the fact that [the employee] is not an insured has no effect on which cars are covered." *Morris v. Weiss*, 414 N.W.2d 485, 489 (Minn.Ct.App.1987) (emphasis in original).

While we are not bound by the decisions of foreign jurisdictions, we find the reasoning of those courts to be logical and

compelling. The Continental policy clearly requires that, for coverage to exist, there must be a covered auto and an insured as defined by the policy. We can conceive of no other interpretation that gives logic and meaning to the policy language. The policy is not ambiguous. *See, Sturrock, supra,* 146 S.W.3d at 126. Piazza was clearly not intended to be covered when he was driving his own automobile. Therefore, we hold that the circuit court erred by determining that he was an "insured", as defined by the insurance agreement.

## Public Policy

 Kemper further argues that, even if we do not find that the policy is ambiguous, we should reject Continental's interpretation as contrary to public policy. We have previously held that "[i] nsurers have a right to limit their liability and to impose whatever condition they please in the policy so long as neither the limitation on liability nor the condition contravenes a statutory inhibition or the State's public policy." *Walther v. Allstate Ins. Co.,* 83 Md.App. 405, 411, 575 A.2d 339 (1990). The Court of Appeals has said that Maryland's compulsory motor vehicle insurance law requires that

> there must be maintained on every motor vehicle required to be registered in Maryland certain security, usually in the form of a motor vehicle liability insurance policy, which provides coverage for the payment of liability claims. [Maryland Code Ann., Transportation, § 17–103(a)]. In addition, every motor vehicle liability insurance policy issued, sold, or delivered in Maryland must provide specified minimum liability coverage. [Maryland Code Ann., Transportation, § 17–103(b)]. In addition to mandatory liability insurance, the statutory provisions require various other coverages for Maryland motor vehicles and in Maryland motor vehicle insurance policies. Finally, the statutory provisions authorize specified exclusions to the required security and required insurance coverages.

*Larimore v. American Ins. Co.,* 314 Md. 617, 618–19, 552 A.2d 889 (1989) (citations omitted). *See also Wilson v. Nationwide Mut. Ins. Co.,* 395 Md. 524, 910 A.2d 1122 (2006).

Kemper has offered no example of how the policy in the case *sub judice* fails to satisfy the minimum standards of Maryland's compulsory insurance laws. Both vehicles involved in Piazza's accident were adequately covered to meet Maryland's minimum standards. The only issue requiring resolution was whether Jani–King's policy or Piazza's personal policy covered the damages incurred by Green. As the injured victim, Green was able to access Piazza's coverage under the Allstate policy and might well have been able to access coverage under the Continental policy had she sued Jani–King on an agency or respondeat superior theory.

We hold that the Continental–Jani–King policy exclusion is not ambiguous; therefore, the policy did not cover Piazza in the circumstances. Because Maryland's compulsory insurance standards have been met, there is no intrusion upon public policy. Therefore, we shall reverse the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED;**

**COSTS ASSESSED TO APPELLEES.**